STATE v. RALEIGH SPELLER.

(Filed 5 May, 1948.)

**1. Jury § 8: Grand Jury § 1—**

Rejection of prospective jurors for want of good moral character and sufficient intelligence is available to the County Commissioners as a general objection only when the jury list is being prepared, G. S., 9-1, and not after the names are in the box, G. S., 9-2, G. S., 9-7.

**2. Criminal Law § 81 (h): Appeal and Error § 40d—**

Where the evidence does not support the findings of fact upon which the conclusions of the trial court are based, the rulings are subject to review on appeal.

**3. Jury § 10: Grand Jury § 1—**

The law permits no distinction in the selection of prospective jurors from names rightly in the jury box.

**4. Grand Jury § 1: Indictment § 13: Constitutional Law § 33—**

The evidence disclosed that the names of Negroes were printed in red and the names of white persons were printed in black in preparing names for the jury box, and that in drawing the names from the box the names of Negroes were without exception rejected.  *Held:* The motion of defendant, a Negro, to quash the indictment found by a grand jury so selected, should have been allowed, since such systematic and arbitrary exclusion of Negroes from the grand jury deprived him of his constitutional rights. Constitution of N. C., Art. I, sec. 17.  Fourteenth Amendment to the Constitution of the U. S.

**5. Indictment § 14—**

Upon quashal of an indictment because returned by an improperly selected grand jury, defendant is not entitled to his discharge, but should be held for action by a duly constituted grand jury.

APPEAL by defendant from *Edmundson, Special Judge,* at November Term, 1947, of BERTIE.

Criminal prosecution on indictment charging the defendant with felonious assault and rape.

At the August Term, 1947, Bertie Superior Court, Frizzelle, J., presiding, the grand jury returned a true bill against the defendant charging him with felonious assault and rape.

Upon arraignment and before plea, the defendant moved to quash the indictment because of systematic, arbitrary and intentional exclusion of members of his race, the Negro race, from jury service in Bertie County by the administrative officers in charge of jury selection.  Upon the hearing of the motion, there was evidence addressed to the matter, both from the defendant and the prosecution.

The Register of Deeds of the County testified that he had been Clerk of the Board of County Commissioners for 17 years; that Negroes comprise approximately 60% of the population of the County, and about 35% or 40% of the taxpayers; that the names of Negroes in jury box No. 1 are printed in red, while those of whites are printed in black; that the Commissioners pass upon the person whose name is drawn, and either accept or reject such person when called; that in his 17 years as Clerk to the Board of County Commissioners he had never seen the name of a Negro placed on the approved list of prospective jurors; that it is

"common knowledge, and generally known, that Negroes do not serve and have not served on grand or petit juries in Bertie County"; that he knows some of the Negroes whose names have been drawn and rejected and he would say they are average citizens; that "whenever the name of a colored person was called at a drawing of the County Commissioners nobody said anything," or they would say: "Strike him out" or "Let him go"; that according to his records no Negro has ever been summoned for jury duty by the County Commissioners.

This witness further said, when questioned by the court, that the Commissioners had followed the statutes on the subject of jury selection, and that there had been no intentional or purposeful discrimination against the colored race solely or on account of race or color. He explained that the red and black scrolls were for the convenience of the sheriff in summoning the prospective jurors, as they would indicate whether to look for a white or colored person.

The Chairman of the Board of County Commissioners testified that there had been "no discrimination at all" in the selection of persons to serve on juries; that he had never "known a Negro's name to be on the list of persons chosen for service on a grand or petit jury," but that all rejections were for want of good moral character and sufficient intelligence.

The Clerk of the Superior Court, two members of the bar, and others testified that they had never known a Negro to serve on the grand jury in Bertie County.

The court found that there had been no intentional or purposeful discrimination against the colored race in the selection of jurors for the August Term, 1947, Bertie Superior Court, and overruled the motion to quash the bill of indictment. Exception by the defendant.

At the November Term, 1947, Bertie Superior Court, Edmundson, S. J., presiding, the case came on for trial. The defendant again moved to quash the bill of indictment upon the same ground as urged at the August Term, and by consent the evidence previously taken on the motion was used upon its renewal. The motion was again overruled on findings similar to those made at the August Term. Exception by the defendant.

The case then proceeded to trial and resulted in a conviction of rape and sentence of death.

The prisoner appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Herman L. Taylor and C. J. Gates for defendant.*

STACY, C. J. The question for decision is the correctness of the rulings on the motion to quash.

A careful perusal of the record leaves us with the impression that the findings and rulings of the trial court on the defendant's motion to quash the indictment are without support in the factual evidence. True, it is stated by at least two of the witnesses that the Commissioners intended and practiced "no discrimination" in the drawing of jurors, but these are conclusional statements which run counter to the facts. For instance, the Clerk of the Board of County Commissioners says the red and black scrolls were for the convenience of the Sheriff in summoning prospective jurors, albeit his own testimony shows that the red scrolls never reached the Sheriff or got beyond the Commissioners. And the Chairman of the Board of County Commissioners says that all rejections were made for "want of good moral character and sufficient intelligence." This cause was available to the Commissioners as a general objection only when the jury list was being prepared, G. S., 9-1, and not after the names were in the box. G. S., 9-2; 9-7.

The conclusions reached in the court below are not supported by the record. Hence, the rulings are subject to review on appeal. *S. v. Walls,* 211 N. C., 487, 191 S. E., 232 (*certiorari* denied, 302 U. S., 635); *S. v. Henderson,* 216 N. C., 99, 3 S. E. (2d), 357; *S. v. Daniels,* 134 N. C., 641, 46 S. E., 743; *S. v. Peoples,* 131 N. C., 784, 42 S. E., 814. Even in some discretionary matters an appeal may lie for deficiency in the record. *Crane v. Carswell,* 204 N. C., 571, 169 S. E., 160.

In *S. v. Peoples, supra,* it was held by this Court that "the exclusion of all persons of the Negro race from a grand jury, which finds an indictment against a Negro, where they are excluded solely because of their race or color, denies him the equal protection of the laws" in violation of his constitutional rights, and that a motion to quash the indictment would properly lie in such case. A like conclusion is reached here by virtue of our decisions on the "'law-of-the-land" clause in the Declaration of Rights, Art. I, Sec. 17. *S. v. Collins,* 169 N. C., 323, 84 S. E., 1049.

It has long been the holding in this jurisdiction that the law knows no distinction among those whose names are rightly in the jury box, and none should be recognized by the administrative officials. *S. v. Sloan,* 97 N. C., 499, 2 S. E., 666; *Capehart v. Stewart,* 80 N. C., 101.

Then, when we turn to the Federal cases on the subject, no doubt is left as to the invalidity of the indictment appearing on the present record. *Patton v. Mississippi,* 332 U. S., 463; *Smith v. Texas,* 311 U. S., 128, 85 L. Ed., 84; *Pierre v. Louisiana,* 306 U. S., 354, 83 L. Ed., 757; *Hollins v. Oklahoma,* 295 U. S., 394, 79 L. Ed., 1500; *Norris v. Alabama,* 294 U. S., 587, 79 L. Ed., 1074; *Rogers v. Alabama,* 192 U. S., 226, 48 L. Ed., 417; *Carter v. Texas,* 177 U. S., 442, 44 L. Ed., 839; *Neal v. Delaware,* 103 U. S., 370, 26 L. Ed., 567. "A systematic and arbitrary exclusion of negroes from grand and petit jury lists because of

their race and color constitutes a denial to a negro charged with crime of the equal protection of the laws guaranteed by the Fourteenth Amendment." *Hale v. Kentucky,* 303 U. S., 613, 82 L. Ed., 1050. See Annotation following this case in 82 L. Ed., 1053, for collection of authorities and valuable note.

Upon the showing here made, the trial court might well have directed the Commissioners to proceed, as the law commands, with the drawing of a proper jury panel to be summoned for service at a later term, from which a lawful grand jury could be drawn and unexceptionable petit juries selected. G. S., 9-3; 9-25. Perhaps this may now be done without an order of court.

The defendant is not to be discharged. He will be held until the accusation against him can be performed by an unexceptionable grand jury, and, even after the present bill is quashed, the court may still order his detention for like purpose, if need be, in manner similar to that approved in *S. v. Griffice,* 74 N. C., 316.

The exceptions to the rulings on the motion to quash must be sustained.

Reversed.