### SPELLER v. CRAWFORD, Warden, Central Prison of Raleigh, N. C.
#### No. 486–B.

United States District Court,
E. D. North Carolina. Raleigh Division.
July 13, 1951.
Judgments Affirmed Nov. 5, 1951.

13. Ragan v. Merchants Transfer Co., cited in Footnote 10 supra, 337 U.S. loc. cit. 533, 69 S.Ct. loc. cit. 1235.

Herman L. Taylor, Raleigh, N. C., C. J. Gates, Durham, N. C., for petitioner.

Hughes Rhodes, Asst. Atty. Gen., Ralph Moody, Asst. Atty. Gen., R. Brookes Peters, Jr., General Counsel, State Highway & Public Works Commission, Raleigh, N. C., for respondent.

GILLIAM, District Judge

The petitioner, a negro, has been tried three times before a jury in the Superior Court of Bertie County, North Carolina, and convicted on each trial. The bill of indictment upon which he was tried was returned at the August, 1948 Term of the Superior Court of Bertie County by a Grand Jury consisting of members of both the white and negro races, and charged the petitioner with the crime of rape. The petitioner duly appealed to the Supreme Court of North Carolina, from each of the judgements which sentenced him to death; the first appeal is reported as State v. Speller, 229 N.C. 67, 47 S.E.2d 537; and in this case the Supreme Court of North Carolina held that the motion of the defendant to quash the indictment should have been allowed upon the showing that in Bertie County the names of negroes were printed in red and the names of white persons were printed in black, and that in drawing the names from the box the names of negroes were without exception rejected, as such procedure constituted "systematic and arbitrary exclusion of negroes from the Grand Jury" on account of race. The Supreme Court ordered that the petitioner be held for the finding of an indictment by a proper Grand Jury.

The second appeal is reported as State v. Speller, 230 N.C. 345, 53 S.E.2d 294, 299. On this appeal the Supreme Court granted the petitioner a new trial, stating in its opinion: "Thus, the record disclosed not only that the prisoner and his attorneys were denied a reasonable opportunity in the light of prevailing conditions to investigate, prepare, and present his defense on the challenge to the array, but also that such denial of such opportunity prejudiced the prisoner's rights."

The third appeal is reported as State v. Speller, 231 N.C. 549, 57 S.E.2d 759. On this appeal the judgment of death imposed in the Superior Court was affirmed and Chief Justice Stacy, writing for the Court, stated: "For the third time the defendant appeals from a conviction of rape, without any recommendation from the jury, and sentence of death as the law commands in such cases. * * *

"On the present hearing, all charges of discrimination, jury defect and alleged irregularities, which again constitute the defendant's principal exceptions, have been carefully investigated with ample opportunity afforded the defendant to be heard upon his challenges. * * *

"The case was tried at the August Term, 1949, Bertie Superior Court, before a jury selected from a special venire drawn from Vance County at the instance of the defendant. 'Defendant's counsel suggested that the venire from which the said jury should be selected be summoned from the most remote county in the Third Judicial District, the same being Vance County'.

"It was made to appear that on the first Monday in July, 1949, the Commissioners of Vance County had purged the jury lists of their county and in full compliance with the law had placed the names of persons of both the white and the colored races in the jury box without discrimination of any kind. On the special venire drawn to try the instant case there appeared the names of seven Negroes, the race to which the defendant belongs. It is not the right of any party to be tried by a jury of his own race, or to have a representative of any particular race on the jury. It is his right, however, to be tried by a competent jury from which members of his race have not been unlawfully excluded. * * * No such exclusion appears here. The challenge to the array

was properly overruled on the findings made by the trial court, which are amply supported by the evidence and are without sufficient challenge under the rules. * * *

"The exceptions to the charge are reckless and are patently without merit. They are not sustained. The court was careful to call to the attention of the jury Chap. 299, Session Laws 1949, providing that 'if the jury shall so recommend at the time of rendering its verdict in open court, the punishment (for rape) shall be imprisonment for life in the State's prison, and the court shall so instruct the jury.' Notwithstanding the instruction, the jury did not see fit to make such a recommendation."

Upon the affirmation by the Supreme Court of North Carolina of petitioner's third conviction and sentence, application was filed with the Supreme Court of the United States for a writ of certiorari to review the decision of the Supreme Court of North Carolina, and on the 9th day of October, 1950, the Supreme Court of the United States denied the application, 340 U.S. 835, 71 S.Ct. 18. The application for such writ was based upon the same facts, arguments and contentions as to the law which the petitioner now requests this Court to review upon this petition for a writ of habeas corpus.

When this case was called for trial at the August Term, 1949, of the Superior Court of Bertie County, the presiding Judge, in compliance with the petitioner's motion, ordered "that a special venire from Vance County be summoned by the Sheriff of Vance County to attend at the Court House at Windsor, North Carolina, at 10:30 A. M. on the 31st day of August, 1949, to serve as jurors in said action", and ordered "the Clerk to the Board of County Commissioners of Vance County to cause one hundred scrolls to be drawn from box No. 1 by a child under ten years of age, and the names so drawn shall constitute the special venire, and the Clerk of the Superior Court of Vance County shall insert their names in a writ of venire and deliver the same to the Sheriff of Vance County, and the persons named in the writ and no others shall be summoned by the Sheriff of Vance County to be and appear at the Court House

in Windsor in Bertie County at 10:30 A. M. on the 31st day of August, 1949. That the said venire shall be drawn as aforesaid in the presence of the defendant, Raleigh Speller, and at least one of his attorneys and the Solicitor of this Judicial District, at 4:30 P. M. on the 29th day of August, 1949."

In pursuance to the above order, one hundred scrolls were drawn from jury box No. 1 by a child under ten years of age, in the office of the Clerk of the Superior Court of Vance County, in the presence of the petitioner, his counsel, Mr. Herman L. Taylor, the Solicitor of the Third Judicial District, Mr. Ernest Tyler, and the Clerk to the Board of County Commissioners of Vance County, who, under the law, has custody of the jury boxes. Of the one hundred individuals whose names were drawn from the jury boxes to constitute the special venire, sixty-three were served by the Sheriff of Vance County and attended upon the trial at Windsor, N. C. Of the number attending, four were members of the negro race, the others were members of the white race. From those attending, the jury which heard the case and convicted the petitioner was chosen according to the statutes and the practice of the court.

The petitioner did not challenge the Grand Jury which found the bill of indictment, and no motion to quash was made; but after argument and entry of a plea of not guilty, the petitioner for the first time challenged the entire array of petit jurors and special venire summoned from Vance County on the ground that the officials of Vance County, whose duty it was to prepare the jury lists, purposefully, arbitrarily and systematically discriminated against members of the negro race by excluding negroes from the jury lists and panels because of their race, thereby violating petitioner's right to a trial by his peers as guaranteed under the Constitution and laws of the State of North Carolina and the Constitution of the United States.

Upon the petitioner's challenge to the array of petit jurors and his motion that the Court quash and set aside the entire array of special veniremen, the presiding Judge caused to be issued a subpoena duces tecum

to the Chairman of the Vance County Board of Commissioners, the Clerk of the Board, the Clerk of the Superior Court, the County Tax Collector, and the Sheriff, all of Vance County, requiring them to bring in court their several records pertaining to the listing, drawing and summoning of jurors in Vance County, together with the jury boxes and records pertaining thereto. The witnesses subpoenaed appeared before the presiding Judge with their records and the jury boxes, and thereupon the petitioner was given opportunity to present evidence in support of his motion that the array of petit jurors and special veniremen summoned from Vance County be quashed and set aside. The petitioner presented several witnesses, as the record will show, who testified as to the manner and method of the drawing of the special venire as appeared in the transcript of evidence and statement of cases on appeal heretofore filed in this cause, and the presiding Judge made full and complete findings of fact as will appear on pages 57 through 63 of the transcript which has been filed as a part of the record of this proceeding, and upon these findings the presiding Judge overruled and dismissed the motion that the array of special veniremen be quashed and set aside. The Judge concluded that there had been no purposeful, arbitrary and systematic exclusion of negroes from the jury boxes on account of their race, and thereupon the cause was duly tried by a jury of twelve selected from the panel drawn from the jury box of Vance County, which panel, as above noted, contained four members of the negro race who were served and attended, and three other members of the negro race who were not found and served. This jury found the petitioner guilty and he was sentenced to die.

Although the Court felt strongly disposed to deny the petition for writ of habeas corpus solely on the procedural history, it was decided to give the petitioner an opportunity to present such evidence as he might have upon the merits of his contentions, therefore, the writ was issued and the respondent in compliance brought the petitioner before the court in Tarboro, North Carolina, in the Eastern District of North Carolina on the 3rd day of January, 1951, to which date the return by order of the Court had been continued. At the outset of the hearing, upon the return, the respondent filed a motion to discharge the writ without the taking of evidence. This motion is filed with the case papers. The Court overruled the motion and proceeded to take evidence from both the petitioner and the respondent. The respondent entered a general objection to every question propounded by petitioner to their witnesses, and upon the overruling of each objection the respondent moved to strike out the answer to the question, and in each instance the motion was denied. When the respondent examined witnesses in his own behalf, the questions were propounded after the respondent had reiterated his objection to all the evidence and reserved his exceptions.

From the evidence introduced the Court has found certain facts separately, and these findings are filed simultaneously herewith.

At the conclusion of all the evidence the respondent renewed his motion to dismiss, and the motion was denied and overruled.

I had no very serious doubt at the time of the soundness of respondent's motion to dismiss, but such doubt as was entertained was resolved in favor of the petitioner, so that a finding now on the factual background of the case may appear in the record.

The Court now concludes that the writ should be vacated and the petition dismissed upon the procedural history and the record in the State Courts, for the reason that habeas corpus proceeding is not available to the petitioner for the purpose of raising the identical question passed upon in those Courts. There are a number of cases which so hold and the cases cited by petitioner's counsel fail to convince me of the correctness of his contention.

The question is discussed by Chief Judge Parker in Sanderlin v. Smyth, 4 Cir., 138 F.2d 729, page 730, with these comments: "The writ of habeas corpus may not be used in such cases as an appeal or writ of error to review proceedings in the state court"; at page 731 of 138 F.2d, "The judgment of the state court is ordinarily res adjudicata, not only of those

issues which were raised and determined, but also of those which might have been raised"; at page 731 of 138 F.2d, "Ordinarily, adjudications made by the state courts in connection with applications made to them will be binding on the federal courts". Among many other cases examined are Smith v. United States, D.C. Cir., 187 F.2d 192; Andrews v. Swartz, 156 U.S. 272, 15 S.Ct. 389, 39 L.Ed. 422; Morton v. Henderson, 5 Cir., 123 F.2d 48; Hawk v. Olsen, 8 Cir., 130 F.2d 910; Eury v. Huff, 4 Cir., 141 F.2d 554; and U. S. ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976.

In the last case the Court said at page 981 of 166 F.2d, "We should not lose sight of the fact that the Federal courts are being used to invade the sovereign jurisdiction of the States, presumed to be competent to handle their own police affairs, as the Constitution recognized when the police power was left with the States. We are not super-legislatures or glorified parole boards. * * * When we condemn a State's exercise of its jurisdiction and hold that the exercise of its power is not in accordance with due process, we are in effect trying the States. It is State action that is on trial, and a decent regard for the coordinate powers of the two governments requires that we give due process to the State. That is the reason that in habeas corpus cases the relator must first show that he has exhausted his State remedies to open the way for the Federal courts to try the State's exercise of its sovereign power. For after all, the States represent the people more intimately than the Federal government. * * * There is no room here for crusades or the fulfillment of missions". This, to my mind, is the only proper approach to this delicate question, and any other will mean impairment of respect for both the Courts of the States and the Courts of the United States. The State Courts bow, of course, to the mandates of the Federal Courts, but, no doubt, indulge in respectful resentment of the repeated suggestion that they are incapable of enforcing State laws in accordance with the United States Constitution and in line with principles of justice and fair play.

 Conceding, for argument's sake, that the original "jurisdictional test" in cases like this gives way to a new concept of the scope of matters to be considered in habeas corpus cases under which the test is whether "such a gross violation of constitutional right as to deny to the petitioner the substance of a fair trial", nevertheless, petitioner is not entitled to the relief sought.

The position that petitioner was denied "the substance of a fair trial" cannot be sustained upon the evidence, including both that taken in the State Court and that taken in this Court.

The findings of fact of the trial Judge, with respect to whether there had been prejudicial discrimination against petitioner in the composition of the jury box from which the trial jury was selected, are set out in the record in the North Carolina Supreme Court, at page 57. And these findings have been adopted as the findings of fact of this Court.

At the hearing before this Court, the Vance County jury boxes No. 1 and No. 2 were brought before the Court by the Register of Deeds of Vance County, who, under the law of North Carolina, is Clerk to the County Board of Commissioners and as such Clerk holds the custody of the jury boxes for the Board of Commissioners. These jury boxes were opened and the scrolls therein examined, with the purpose of determining how many names of negroes and whites, respectively, had been placed therein when the purge of the jury boxes in July, 1949 was accomplished. As a result of this procedure an agreement between counsel was reached that there were in both boxes, combined at the time of the hearing and, of course, at the time of the drawing of the venire in this case, the names of 145 negroes and the names of 2,081 whites. Each of the persons now living who had any part in the purge of the jury boxes in 1949, to-wit, three of the County Commissioners and the Clerk of the Board, testified that the names which were placed in the jury boxes were taken

entirely from the Tax Books of Vance County, and that no person's name was rejected on account of his or her race. All the direct evidence is that there was no discrimination against the negro race as such, and the ratio of negroes to whites in the jury boxes, in the light of the well known fact that the proportion of whites qualified for jury service is much higher than that of negroes who are so qualified, is not sufficient, in the Court's opinion, to support the burden resting upon the petitioner to show actual discrimination. The Superior Court Judge so held, and his finding has been upheld by the North Carolina Supreme Court which, upon the first of the three appeals taken by the petitioner, demonstrated its readiness to strike down the findings of a trial Judge in situations of this kind, when required by the ends of justice. On this first appeal, 229 N.C. 67, 47 S.E.2d 537, 538, it appeared that the trial Judge had found there was no "intentional or purposeful discrimination against the colored race in the selection of jurors". But the Supreme Court of North Carolina refused to accept this finding and said: "A careful perusal of the record leaves us with the impression that the findings and rulings of the trial court on the defendant's motion to quash the indictment are without support in the factual evidence". A new trial was ordered.

 No real problem is presented by the evidence which shows that dots were used to identify the names of negroes appearing on the jury scrolls. It is suggested that the circumstance proved discrimination, but there is nothing to the argument. It might be reasonably argued that this device was used to enable those drawing juries to distinguish between names of whites and names of negroes when desired, but in this case the drawing was in the presence of one of petitioner's counsel and every name drawn by the child under ten years of age was entered on the panel or venire, regardless of dots and irrespective of race. As a matter of fact, seven negroes were drawn and served, and four negroes attended the trial as members of the venire; one negro was actually examined on the voir dire, though no negro was actually accepted. It is certainly not enough for petitioner to show a purpose generally on the part of Vance County officials to limit the number of negroes drawn for jury service; he must show by the evidence, as I read the cases, that discrimination actually occurred in his case in the matter of the composition of the jury which passed upon his rights.

I agree with the Superior Court Judge who tried the petitioner and sentenced him to die, and the Supreme Court of North Carolina, which, having vacated two former death sentences in the interest of justice, has upheld the trial now questioned and the death sentence imposed as a result. The petitioner failed to prove his allegation of discrimination in the composition of the jury list.

It is decided, therefore, first, that the writ should be vacated and the petition dismissed solely in the light of the procedural history and the record in the State Courts; and, secondly, that in any event, even if petitioner is now entitled to raise the same question passed on in the State Courts, he has failed to substantiate the charge that he did not have a trial according to due process, and is not entitled to his release as prayed.

An order has been entered vacating the writ, dismissing the petition, and remanding the petitioner to the custody of the respondent and the North Carolina authorities for further proceedings under the judgment entered against him nearly two years ago.

*Addenda:* Two other cases which seem to support the conclusion reached are: Stonebreaker v. Smyth, 4 Cir., 163 F.2d 498, and Adkins v. Smyth, 4 Cir., 1951, 188 F.2d 452.

### Findings of Fact.

Upon the evidence presented and the stipulations of counsel, the Court finds these facts:

1. Petitioner, an inmate of the Central Prison of the State of North Carolina, instituted this proceeding against respondent,

Warden of the aforesaid prison under Chapter 153 of Title 28 of the U.S.Code, by affidavit and motion to proceed *in forma pauperis* for a writ of habeas corpus.

2. Petitioner contends that he is unlawfully detained in prison and under sentence of death at the aforesaid prison.

3. Petitioner was convicted of the capital crime of rape at the August, 1949 Term of the Superior Court of Bertie County, North Carolina, on September 5, 1949.

4. The first indictment upon which petitioner was tried was found at the August, 1947 Term of Bertie County Superior Court by a grand jury; he was tried and convicted under this indictment at the November, 1947 Term; upon appeal to the Supreme Court of North Carolina, State v. Speller, 229 N.C. 67, 47 S.E.2d 537, it was held that the indictment was invalid because of arbitrary exclusion of negroes from the grand jury on account of race; a second indictment was returned at the August, 1948 Term of Bertie County Superior Court by a grand jury composed of members of both the white and negro races; the validity of this second indictment has not been challenged; at the November, 1948 Term of the same Court petitioner was convicted by a jury drawn from Warren County, in accordance with North Carolina law, and sentenced to death; upon appeal from this judgment, the Supreme Court of North Carolina vacated the judgment and granted a new trial for the reason that the trial Judge refused to give counsel for the defense time to investigate the facts and to procure evidence from Warren County in support of the challenge to the array, State v. Speller, 230 N.C. 345, '53 S.E.2d 294; the third trial, the one now questioned, was held at the August, 1949 Term of the same Court, and again the petitioner was convicted and sentenced to death; when the case was called for trial, the presiding Judge, upon petitioner's motion, ordered that "a special venire from Vance County be summoned by the Sheriff of Vance County to attend at the Court House in Windsor, N. C. (Bertie County) * * * to serve as jurors in said action"; and ordered "the Clerk of the Board of Vance County Commissioners to cause one hundred scrolls to be drawn from box No. 1 by a child under ten years of age" to constitute the special venire; in pursuance to such order the scrolls were drawn by a child under ten years of age in the office of the Clerk of the Superior Court of Vance County, in the presence of petitioner, his counsel, Mr. Herman L. Taylor, the Solicitor of the District, and the Clerk of the Board of Commissioners; of the one hundred drawn, sixty-three were served and appeared; of the one hundred drawn, seven were members of the negro race, and of the sixty-three, four were negroes; the others were members of the white race; from those attending, the jury which convicted the petitioner was drawn according to the North Carolina Statutes and the practice in its Courts; one of the negroes was examined on his voir dire, but the jury as finally constituted was composed exclusively of members of the white race.

5. After entry of plea of not guilty to the indictment, the petitioner challenged the entire array of special veniremen drawn from Vance County on the ground that the officials of Vance County whose duty it was to prepare the jury list purposely, arbitrarily and systematically, discriminated against members of the negro race by excluding negroes from the jury box solely on account of race.

6. Upon presentation of such challenge the trial Judge heard such evidence as petitioner desired to offer, and thereupon overruled the motion and disallowed the challenge. (The findings of fact on this evidence are set forth at page 57 of the transcript on appeal to the Supreme Court of North Carolina). The jury returned a verdict of guilty without recommendation of mercy, and again petitioner was sentenced to death.

7. From this judgment the petitioner again appealed to the Supreme Court of North Carolina, and on this appeal the judgment was affirmed, the Court, through the Chief Justice, stating: "On the present hearing, all charges of discrimination, jury

defect and alleged irregularities, which again constitute the defendant's principal exceptions, have been carefully investigated with ample opportunity afforded the defendant to be heard upon his challenges. * * * No such exclusion appears here. The challenge to the array was properly overruled on the findings made by the trial court, which are amply supported by the evidence and are without sufficient challenge under the rules. * * *" [231 N.C. 549, 57 S.E.2d 759.]

8. Upon the affirmation of the Supreme Court of North Carolina of petitioner's third conviction and sentence, application was filed with the Supreme Court of the United States for a writ of certiorari to review the decision of the North Carolina Court, and on the 9th day of October, 1950, the Supreme Court of the United States denied the applications, 340 U.S. 835, 71 S.Ct. 18.

9. Upon denial of the petition for writ of certiorari by the Supreme Court of the United States, the petitioner filed this petition for writ of habeas corpus, and a writ was issued and an order entered staying the execution of the judgment of the State Court pending a hearing.

10. The respondent, in compliance with the writ, brought the petitioner before the Court in Tarboro, N. C. in the Eastern District of North Carolina, on January 3, 1951, to which date the return by order of the Court had been continued.

11. At the outset of the hearing upon the return, the respondent filed a motion to discharge the writ without the taking of evidence (this motion is filed with the court papers). The Court reserved its decision upon the motion and proceeded to the taking of evidence from both the petitioner and respondent. The respondent entered a general objection to every question propounded by petitioner, his witnesses, and upon the overruling of each objection the respondent moved to strike out the answer and in each instance the motion was denied. In every case where the respondent examined the witness in his behalf, the questions were propounded after respondent had reiterated his objections to all the evidence and reserved his exceptions.

12. At the conclusion of all the evidence the respondent renewed his motion to dismiss, and this motion was denied and overruled.

13. The petitioner is a member of the negro race.

14. The facts found by the trial Judge in the State Court, in respect to the composition of the trial jury, are supported by the evidence, including that taken in the State Court, and these findings are adopted as the findings of fact bearing on this question; and the Court specifically finds it was not shown that there was purposeful, systematic and arbitrary exclusion of negroes solely on account of race from the jury boxes of Vance County, from which the special venire was drawn, and from which the trial jury was selected.

Conclusions of Law

Upon these facts the Court concludes:

1. The Court was in error in overruling the respondent's motion to dismiss as a matter of law before the introduction of evidence, and that such motion be and the same is now granted.

2. That the petitioner, who was being held as a prisoner by respondent, awaiting execution under the judgment of the North Carolina Court, was not and is not "in custody in violation of the Constitution or laws or treaties of the United States" within the contemplation of Sec. 2241 (c)(3)of Title 28, United States Code Annotated, and is not entitled to his release as prayed.

3. That the writ should be vacated, the petition dismissed, and the petitioner remanded to the respondent and the North Carolina authorities for further proceedings under the judgment of the State Court and in accordance with its provisions.

4. That an order to such effect be entered.