**DANIELS et al. v. ALLEN, Warden, Central Prison of the State of North Carolina.**

No. 6330.

United States Court of Appeals Fourth Circuit.

Argued Oct. 12, 1951.

Decided Nov. 5, 1951.

Soper, Circuit Judge, dissented.

O. John Rogge, New York City (Rogge, Fabricant, Gordon & Goldman, New York City, Herman L. Taylor, Raleigh, N. C., and Murray A. Gordon, New York City, on brief), for appellant.

Ralph Moody, Asst. Atty. Gen., of North Carolina (Harry McMullan, Atty. Gen., of North Carolina, on brief), for appellee.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order vacating a writ of habeas corpus and dismissing the petition for the writ. Appellants were indicted in a North Carolina state court for the crime of murder and were convicted by a jury of murder in the first degree. The jury did not recommend mercy in the case and petitioners were sentenced to death. They appealed to the state Supreme Court, which affirmed the conviction, and then applied to the Supreme Court of the United States for a writ of certiorari, which was denied. Two applications for leave to file petitions for writs of error coram nobis were filed before the Supreme Court of North Carolina and were denied by that court. After all these proceedings were had, a petition for habeas corpus was filed in the court below on grounds which had been raised before the state court in the trial of the case. A full hearing was given appellants by the District Judge, who after finding the facts held that there was no merit in the grounds urged by appellants and also that they had not shown themselves entitled to the writ in view of the procedural history of the case. The last ground is the only one that we need consider.

This is not a case where facts alleged to invalidate action of a state court were discovered after trial, or where the defendants were without counsel to protect their rights during trial. They were represented on the trial by counsel of their own choosing, who took the place of counsel who had been earlier appointed by the court to represent them; and these counsel of their choice raised, offered evidence to support and had the trial court pass upon the very points urged in the petition for habeas corpus, viz. that Negroes were discriminated against in the selection of the grand and petit juries by which appellants had been indicted and tried and that confessions offered in evidence against appellants were not voluntary. The trial court, after a full hearing, decided these questions against appellants, exceptions to the rulings

were noted, and after conviction and sentence an appeal to the Supreme Court of the state was duly taken and counsel obtained from the trial judge an extension allowing 60 days for serving case on appeal. The case on appeal was not served within the 60 days allowed, but counsel attempted to serve it one day after the expiration of that period. The trial judge struck it from the record because not served within time, and appellants attempted to bring it up as a part of the record by applying to the Supreme .Court of the state for a writ of certiorari, which that court denied, State v. Daniels, 231 N.C. 17, 56 S. E.2d 2. In ·denying the writ, the Supreme Court pointed out that appellants could apply to that court for permission to file in the trial court a petition for writ of error coram nobis to raise matters extraneous to the record; and application was made for such permission, which was denied on the ground that it did "not make a prima facie showing of substance". State v. Daniels, 231 N.C. 341, 56 S.E.2d 646, 647.

After the Supreme Court of North Carolina had denied appellants' petition for certiorari and for permission to apply for the writ of error coram nobis, it affirmed the judgment and sentence of the trial court and dismissed the appeal. State v. Daniels, 231 N.C. 509, 57 S.E.2d 653.[1] Application was thereupon made to the Supreme Court of the United States to review the action of the state court, petitioners attaching to their application a full report of the proceedings of the trial court and complaining because of the selection of the jury and the admission of the confessions as well as because the case on appeal had been stricken from the record. These questions were thoroughly discussed in the briefs filed in support of the petition for certiorari; but

the Supreme Court denied the writ, calling attention in its memorandum order, not only to the decision of the Supreme Court of North Carolina affirming the judgment, but also to the decisions of that court denying the petition for certiorari to bring up the case on appeal and denying permission to file petition for writ of error coram nobis. Daniels v. North Carolina, 339 U.S. 954, 70 S.Ct. 837, 94 L.Ed. 1366.

After denial of certiorari by the Supreme Court of the United States, appellants again applied to the Supreme Court of North Carolina for permission to file a petition for writ of error coram nobis in the trial court; but this was denied on the ground that the only matter presented by the petition had been passed upon by the trial court and had been presented to the Supreme Court of the United States in the application to that court for certiorari. The Court said:

"The petitioners now again petition this Court for leave to file a petition in the Superior Court of Pitt County for a writ of error coram nobis; and incorporate in that petition substantially matters that were presented to the Supreme Court of the United States in their petition to that Court for certiorari. On the face of the petition it appears that these are matters fully presented to the Court upon their trial and there passed upon.

"The function and limitations of the writ of error coram nobis were called to the attention of counsel for the petitioners when the petition for certiorari to bring up the case on appeal was dismissed in this Court. State v. Daniels, 231 N.C. 17, 56 S.E.2d 2, supra; and again in the subsequent decision dismissing the petition for leave to file a petition for such writ in the trial court. * *

1. That the Supreme Court of North Carolina was thoroughly cognizant, at the time, of the right of Negroes accused of crime to be tried by juries in the selection of which discrimination had not been practiced against Negroes and that it was alive to its duty to ̇enforce the right, is shown by its action in granting two new trials to one Raleigh Speller, one in 1948 and the other in 1949, because the right

had not been observed in his case. See State v. Speller, 229 N.C. 67, 47 S.E.2d 537; State v. Speller, 230 N.C. 345, 53 S.E.2d 294. It had before it the fact that the question had been raised in this case; for the record shows that the case on appeal which had been stricken by the trial judge was attached to the application made for certiorari to bring it up as a part of the record.

"The writ of error coram nobis is not a substitute for appeal. Under our practice permission to petition the Superior Court in which the petitioning defendant was tried is given only when the matter on which the petition is based is 'extraneous to the record.' * * *

"We understand that the petition for certiorari presented to the Supreme Court of the United States comprehended all matters which might be pleaded in that Court in the premises, and upon which the petitioners may now rely." State v. Daniels, 232 N.C. 196, 59 S.E.2d 430, 431–432.

No application for certiorari was made to the Supreme Court of the United States to review this decision.

On these facts we think that the District Judge was clearly correct in holding that appellants were not entitled to the writ of habeas corpus. The question involved is not one of exhausting state remedies as a prerequisite to the writ,[2] nor of the rights of one who through lack of counsel has failed to raise constitutional questions in the trial court, but of permitting persons who have been represented by counsel and who have had the trial court pass on the identical questions that they wish to raise by habeas corpus to use that writ in lieu of an appeal to review the action of the trial court on those questions. To permit this to be done would be, not only to permit the writ of habeas corpus to be used in lieu of appeal, but to permit one of the lower federal courts to review the decisions of a state court of coordinate jurisdiction, instead of requiring that the orderly process of appeal to the Supreme Court of the state with application to the Supreme Court of the United States for certiorari be followed. It is no answer to this to say that appellants have lost their right to have the questions which they present reviewed by the Supreme Court of the state. The right of review was provided by state practice and was lost by failure to comply with the reasonable rules of the state court, which

the federal courts have no power to waive or to nullify.

■ It is well settled that the writ of habeas corpus may not be used in lieu of an appeal to review the action of a trial court with respect to questions there raised and passed upon. Woolsey v. Best, 299 U.S. 1, 57 S.Ct. 2, 81 L.Ed. 3; Goto v. Lane, 265 U.S. 393, 44 S.Ct. 525, 68 L.Ed. 1070; Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009; Glasgow v. Moyer, 225 U.S. 420, 428, 32 S.Ct. 753, 56 L.Ed. 1147; Sanderlin v. Smyth, 4 Cir., 138 F.2d 729. And the rule is not different because the appellants or their counsel have allowed the time for serving the case on appeal to elapse and thus lost the right to have the questions reviewed by appeal. Goto v. Lane, supra; Riddle v. Dyche, supra. As said in Goto v. Lane, supra [265 U.S. 393, 44 S.Ct. 527]: "If the questions presented involved the application of constitutional principles, that alone did not alter the rule. Markuson v. Boucher, 175 U.S. 184, 20 S.Ct. 76, 44 L.Ed. 124. And, if the petitioners permitted the time within which a review on writ of error might be obtained to elapse and thereby lost the opportunity for such a review, that gave no right to resort to habeas corpus as a substitute."

■ It is argued that the allegation that constitutional rights of appellants were denied in the ruling of the state trial court is sufficient, of itself, to authorize the issuance of the writ of habeas corpus by the federal district court. The answer is that release under habeas corpus of one convicted by a state court can be had only if the action of the state court may be held void; and it would be absurd to say that the judgment of a court is rendered void because of an erroneous ruling. To justify such action, there must have been such a gross violation of constitutional rights as to deny the accused the substance of a fair trial in a situation where he was not in position to protect himself because of ignorance, duress or other reason for which

2. United States ex rel. Auld v. Warden of New Jersey State Penitentiary, 3 Cir., 187 F.2d 615, upon which appellants rely, deals with the exhaustion of state remedies as a prerequisite to habeas corpus and held the exceptional circumstances there to justify proceeding without exhausting them. It nevertheless affirmed the order of the District Court denying the writ of habeas corpus.

he should not be held responsible. As this court said in Eury v. Huff, 4 Cir., 141 F.2d 554, 555, "A prisoner does not show right to release on habeas corpus merely by showing error on his trial, even though this involve a violation of constitutional right. To entitle him to release on habeas corpus there must have been such 'gross violation of constitutional right as to deny [to the prisoner] the substance of a fair trial and thus oust the court of jurisdiction to impose sentence.'"

In Markuson v. Boucher, 175 U.S. 184, 185, 20 S.Ct. 76, 44 L.Ed. 124, the Supreme Court laid down the rule generally applicable as follows: "We have frequently pronounced against the review by habeas corpus of the judgments of the state courts in criminal cases, because some right under the Constitution of the United States was alleged to have been denied the person convicted, and have repeatedly decided the proper remedy was by writ of error." And in Glasgow v. Moyer, 225 U.S. 420, 429, 32 S.Ct. 753, 756, 56 L.Ed. 1147, the Supreme Court said: "The principle of the cases is the simple one that if a court has jurisdiction of the case, the writ of habeas corpus cannot be employed to re-try the issues, whether of law, constitutional or other, or of fact."

In dealing with the question, with particular reference to the broad language in Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, upon which appellants here rely, the Court of Appeals of the Ninth Circuit, speaking through the late Judge Garrecht, in Graham v. Squier, 9 Cir., 132 F.2d 681, 683–684, said: "The language of the emphasized clause in the excerpt from the Bowen case, considered in and of itself and isolated from the text of which it is a part, might seem to indicate, as petitioner would have it, that whenever *any* constitutional right is infringed in a criminal trial, the accused, if he be convicted, may thereafter nullify the judgment by bringing a habeas corpus proceeding. But taking that clause, as is obviously necessary in order to arrive at the true meaning, in conjunction with the statements of the Supreme Court contained in the very same paragraph, and which express the unvaried

rule that a criminal action may be collaterally attacked on *jurisdictional* grounds alone, one sees immediately that the Supreme Court intended no more than that the writ of habeas corpus should issue only in those cases where the denial of the constitutional rights of the accused operated to prevent the trial court from acquiring jurisdiction over the person of the accused, or if jurisdiction did exist at the commencement of the trial, operated to destroy that jurisdiction at some stage during the progress thereof. That this interpretation of the Supreme Court's language is correct will appear from an examination of the sustaining authorities, which are cited in the case immediately following the clause under discussion."

In Sanderlin v. Smyth, 4 Cir., 138 F.2d 729, 730–731, this court examined with great care the rules to be observed by the federal courts in the troublesome and delicate matter of issuing writs of habeas corpus on the application of persons who are imprisoned under final judgments of state courts. We stated our conclusions in an opinion by a unanimous court as follows:

"There has been some confusion of thought recently with regard to the right of persons imprisoned under judgments of state courts which they claim to have been obtained in violation of rights guaranteed by the Constitution of the United States to apply to the lower federal courts for release under habeas corpus. It may be useful, therefore, to summarize the rules which we understand to be applicable in such cases. They are:

"1. The writ of habeas corpus may not be used in such cases as an appeal or writ of error to review proceedings in the state court. Woolsey v. Best, 299 U.S. 1, 57 S.Ct. 2, 81 L.Ed. 3; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Grant v. Richardson, 4 Cir., 129 F.2d 105; Jones v. Dowd, 7 Cir., 128 F.2d 331. The judgment of the state court is ordinarily res adjudicata, not only of those issues which were raised and determined, but also of those which might have been raised. Woolsey v. Best, supra; Ex parte Spencer, 228 U.S. 652, 33 S.Ct. 709, 57 L.Ed. 1010; Morton v. Henderson, 5 Cir., 123 F.2d 48. Or-

dinarily, failure to raise a constitutional question during trial amounts to waiver thereof (United States [ex rel. Jackson] v. Brady, 4 Cir., 133 F.2d 476, 481); and only where failure to raise the question at the trial was due to ignorance, duress or other reason for which petitioner should not be held responsible, may resort be had to habeas corpus in the federal courts, and, even in these cases, only where it is made to appear that there has been such gross violation of constitutional right as to deny to the prisoner the substance of a fair trial and thus oust the court of jurisdiction to impose sentence. Moore v. Dempsey, supra; Frank v. Mangum, 237 U.S. 309, 331, 35 S.Ct. 582, 59 L.Ed. 969; Cf. Valentina v. Mercer, 201 U.S. 131, 26 S.Ct. 368, 50 L.Ed. 693.

"2. The federal court should not issue the writ, even in the extraordinary cases above indicated, unless it is made to appear that petitioner has no adequate remedy in the state courts. If he has such remedy by habeas corpus, writ of error coram nobis or otherwise, he must pursue it, and can have the writ from the federal courts only after all state remedies have been exhausted. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138; Jones v. Dowd, 7 Cir., 128 F.2d 331; Hawk v. Olson, 8 Cir., 130 F.2d 910, certiorari denied 317 U.S. 697, 63 S.Ct. 435, 87 L.Ed. 557. Ordinarily, adjudications made by the state courts in connection with applications made to them will be binding on the federal courts; and, if the prisoner is not satisfied with state court action, his remedy, after exhausting the rights of review provided by state law, is to apply to the Supreme Court of the United States for writ of certiorari to review the state court proceedings, not to seek such review through application to a lower federal court or judge for a writ of habeas corpus. Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760; and cases there cited; Frach v. Mass., 9 Cir., 106 F.2d 820; United States [ex el. Jackson] v. Brady, 4 Cir., 133 F.2d 476, 482.

"3. The writ of habeas corpus may be issued by a federal court or judge in cases where petitioner is imprisoned under the judgment of a state court only if it is made to appear, (1) that there has been such gross violation of constitutional right as to deny the substance of a fair trial and the prisoner has not been able to raise the question on the trial because of ignorance, duress or other reason for which he should not be held responsible, (2) that he has exhausted his remedies under state law, and (3) that no adequate remedy is available to him under state law, either because state procedure does not provide adequate corrective process or because there are exceptional circumstances, such as local prejudice or an inflamed condition of the public mind, which render it impossible or unlikely for him to obtain adequate protection of his rights in the courts of the state, i. e. he is entitled to the writ in the federal courts 'only when the state courts will not, or cannot, do justice'. United States ex rel. Lesser v. Hunt, 2 Cir., 117 F.2d 30, 31; Moore v. Dempsey, supra."

Under the rules thus laid down, appellants are clearly not entitled to the writ. The questions which they raise have been decided against them by the state trial court and are res judicata. Having been represented by competent counsel on the trial, they cannot claim that their contentions were not properly presented or that they were unable "to raise the question on the trial because of ignorance, duress or other reason for which they should not be held responsible." They cannot say that no adequate remedy was available to them under state law, for their contentions were made and passed upon by the trial court and there were no special circumstances such as local prejudice or an inflamed condition of the public mind to indicate that the state court could not or would not do justice. That they lost their full right of review through failure to comply with the rules does not negative the adequacy of the state remedy. Surely one convicted in a state court may not have his case reviewed by a federal district court instead of the Supreme Court of the state merely by failing to comply with the state rules relating to appeals.

It is argued that the case is one of peculiar hardship because the default in complying with the state court's rules consisted

in only one day's delay. This was a matter, however, which went not to the matter of hearing but of review of the hearing. It was before the Supreme Court of the United States in the application for certiorari; and, proper respect for that court requires that we assume that, if it had thought that such enforcement of the rules of court amounted to a denial of a fair hearing to men condemned to death, it would have granted certiorari either to the Supreme Court or the trial court and would have reviewed the case. The case falls squarely, we think, within what was said by the Supreme Court in Ex parte Hawk, 321 U. S. 114, 118, 64 S.Ct. 448, 450, 88 L.Ed. 572, as follows.[3] "Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily re-examine upon writ of habeas corpus the questions thus adjudicated. Salinger v. Loisel, 265 U.S. 224, 230–232, 44 S.Ct. 519, 521–522, 68 L.Ed. 989. But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the ·state affords no remedy, see Mooney v. Holohan, supra, 294 U.S. [103] 115, 55 S.Ct. [340] 343, 79 L.Ed. 791, ·or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, cf. Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Ex parte Davis, 318 U.S. 412, 63 S.Ct 679 [87 L.Ed. 868], a federal court should entertain his petition for habeas corpus, else he would be remediless."

The citation by the Supreme Court of Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543, and Ex parte Davis, 318 U.S. 412, 63 S.Ct. 679, 87 L.Ed. 868, shows what is meant by the remedy afforded by state law proving in practice unavailable or seriously inadequate. In Moore v. Dempsey it appeared that the accused had been hurried to conviction, without regard to their rights, by a state court under mob domination. In Ex parte Davis, habeas corpus was denied because applicant had not exhausted his state remedies, the court saying that it would not assume that the state court would not handle the case properly.· Nothing is said in either of these cases, or elsewhere, to suggest that a state remedy is to be deemed unavailable or inadequate, so as to authorize resort to the federal courts, merely because applicant has failed to comply with the reasonable rules of the state court in applying for the remedy.

▮ It must be remembered that the lower federal courts are given no power to review state court action. They can release persons held under judgments of state courts only on a holding that such judgments are absolutely void; and judgments are not rendered void by erroneous rulings, even though such rulings involve constitutional rights. The federal courts should not hesitate to grant the writ of habeas corpus and declare void any state court judgment based on such gross violation of constitutional rights as to deny to an accused the substance of a fair trial, where because of ignorance, duress or other reason for which he is not responsible he has been unable to protect himself. On the other hand, they should not, under the guise of exercising the habeas corpus power, usurp the power which has not been granted them of reviewing the action of state trial courts of coordinate jurisdiction. As was well said by Mr. Justice Minton, then a Circuit Judge, in United States ex rel. Feely v. Ragen, 7 Cir., 166 F.2d 976, 981:

"There should not be a rigid formalism in habeas corpus proceedings in which courts are seeking the substance as to the violation of constitutional rights. But it must be remembered that habeas corpus is a collateral attack by the courts of Federal jurisdiction invading the province of State jurisdiction * * *. We should not lose sight of the fact that the Federal courts are being used to invade the sovereign jurisdiction of the States, presumed to be competent to handle their own police affairs, as the Constitution recognized when

---

3. See also Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Adkins v. Smyth, 4 Cir., 188 F.2d 452; Goodwin v. Smyth, 4 Cir., 181 F.2d 498; Stonebreaker v. Smyth, 4 Cir., 163 F.2d 498, 499.

the police power was left with the States. We are not super-legislatures or glorified parole boards. We as courts look only to the violation of Federal Constitutional rights. When we condemn a State's exercise of its jurisdiction and hold that the exercise of its powers is not in accordance with due process, we are in effect trying the States. It is State action that is on trial, and a decent regard for the coordinate powers of the two governments requires that we give due process to the State. That is the reason that in habeas corpus cases the relator must first show that he has exhausted his State remedies to open the way for the Federal courts to try the State's exercise of its sovereign power. For after all, the States represent the people more intimately than the Federal Government.

"To redress an alleged imbalance between the State's exercise of its power and the rights of the individual, the Federal courts exercise a delicate function, the importance of which points up our duty to consider that imbalance in the light of the rights of organized society through the State Government, representing all the people, as against the relator-defendant. There is no room here for crusades or the fulfillment of missions. We are to hold the balance true. Frank v. Mangum, 237 U.S. 309, 329, 35 S.Ct. 582, 59 L.Ed. 969; Urquhart, Sheriff, v. Brown, 205 U.S. 179, 183, 27 S.Ct. 459, 51 L.Ed. 760; Baker v. Grice, 169 U.S. 284, 290, 291, 18 S.Ct. 323, 42 L.Ed. 748."

For the reasons stated the order vacating the writ of habeas corpus and dismissing the petition of appellants will be affirmed.

Affirmed.

SOPER, Circuit Judge (dissenting).

Two illiterate Negro youths were convicted of wilful and premeditated murder after a trial by jury in the Superior Court of Pitt County, North Carolina, and sentence of death was passed upon them on June 6, 1949. Their attorneys immediately noted an appeal to the Supreme Court of North Carolina and were allowed 60 days in which to prepare and serve a statement of the case on appeal in accordance with the local practice. The most important ground of appeal was the charge, not without factual foundation, that the jury had been chosen in a way which violated the Constitution of the United States in that persons of the colored race were deliberately excluded from the jury lists from which the trial juries of the county were selected. Negroes comprised 44.2 per cent. of the persons in Pitt County over 21 years of age, and one-third of the persons on the tax list of the county which constituted the basic source for the jury list. The literacy rate for Negroes in the county was 74.2 per cent. Nevertheless no Negro has ever served on the Pitt County grand jury; less than 2 per cent. of the jury list consists of Negroes, and less than 1 per cent. of the petit jurors have been Negroes.

It has been decided in many cases that the exclusion of Negroes from juries solely because of their race deprives a Negro defendant of the equal protection of the laws guaranteed by the 14th Amendment. See Ross v. Texas, 341 U.S. 918, 71 S.Ct. 742, 95 L.Ed. 1352; Shepherd v. Florida, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740; Brunson v. North Carolina, 333 U.S. 851, 68 S.Ct. 634, 92 L.Ed. 1132. The last citation shows that the Supreme Court of the United States on March 15, 1948, reversed without opinion the judgments of the Supreme Court of North Carolina in five criminal cases from Forsyth County in that state on account of the unconstitutional exclusion of Negroes. In one of these cases, as in the case at bar, a single Negro served on the county jury, but in all, the evidence showed an unconstitutional discrimination. Subsequently the Supreme Court of North Carolina reversed two consecutive judgments of the Superior Court of Bertie County in State v. Speller, 229 N.C. 67, 47 S.E.2d 537 and 231 N.C. 549, 57 S.E.2d 759, for similar defects in the constitution of the jury. It is not claimed that the evidence of discriminatory exclusion of Negroes from the jury lists in Pitt County, from which the jury in the pending case was chosen, differs materially from the evidence of discrimination in the Brunson and Speller cases where the convictions were set aside.

Unfortunately, the convicted men in the pending case have never been able to secure a review of the judgment of the trial court on the merits either in the Supreme Court of North Carolina or in the Supreme Court of the United States, because their attorneys failed to file the statement of their case on appeal within the 60 day period fixed by the court. They served their statement on the solicitor of Pitt County, the prosecuting attorney, on August 6 instead of August 5, 1949, and hence were one day late. This delay did not embarrass the prosecution in any way and might well have been waived since the solicitor was able to prepare and serve his reply within the time allowed him by the court; and hence the final disposition of the case in the Supreme Court of the State was in no way retarded by the slip of defendants' attorneys. Nevertheless the solicitor moved the court to strike the case on appeal and this motion was granted. The result was that an appeal on the merits to the Supreme Court of North Carolina was precluded, notwithstanding the repeated efforts to secure such a hearing which are described in the opinion of the court herein.

Furthermore, the Supreme Court of the United States did not consider the case on its merits in passing upon the application for certiorari. Seemingly, the court adopted the course advocated by the Attorney General of the State in his brief in opposition to the application for the writ wherein he asked the court to dismiss the petition on the ground that the Supreme Court of North Carolina had not passed on the merits of the case, but had dismissed the appeal for procedural reasons only and had suggested that the appellants might pursue another method which they had failed to do. It is true that during the argument in the Supreme Court of the United States the attorneys for the petitioners handed to the court a typewritten copy of the proceedings in the trial court and asked the court to consider it; but since it was not part of the record of the Supreme Court of North Carolina, which accompanied the petition for the writ, it is probable that the Supreme Court of the United States did not consider the merits but dismissed the petition because it appeared that the Supreme Court of North Carolina had only passed on local procedural matters, leaving other remedies open to the appellants, and had not decided any federal question. The situation is not unlike that before the Supreme Court in White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348, where it was held that if the court is unable to say that the action of a state Supreme Court, brought to its attention by petition for certiorari, was not based on an adequate non-federal ground, the petition for certiorari must be dismissed, although it sufficiently alleges violation of constitutional rights, and in such case the dismissal of the writ does not bar an application to the Federal District Court for relief based on federal rights. It would seem that the attorneys for the state in the pending case, having induced the Supreme Court of the United States to dismiss the defendants' petition for certiorari on the ground that no federal rights were involved, should now be precluded from using the dismissal of the writ of certiorari by the court as ground for dismissing the pending petition of habeas corpus in the federal District Court.

There is no attempt on the part of the State of North Carolina in the pending appeal to show that there was not a gross violation of the constitutional rights of the prisoners in the trial court. The state's argument proceeds upon the ground that the appellants lost any right to a review of the action of the trial court of Pitt County when their attorneys failed to conform meticulously to the local procedural requirements. The whole case for the state rests upon the established rule that a defendant convicted of crime may not use the writ of habeas corpus in lieu of an appeal to review the action of the trial court upon questions raised and decided at the trial. But this rule, although upheld in numerous decisions, as the opinion of the court shows, has frequently been held inapplicable and unjust under varying circumstances in many cases so that it has become well nigh essential to examine the history of every case in order to determine whether

the rule should be enforced. The subject is illumined by the opinion of the court and the dissenting opinions in Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L. Ed. 1982. There the majority of the court, speaking through Justice Douglas, held that the rule should be applied, but spoke of the exceptions in the following terms, 332 U.S. at page 179, 67 S.Ct. at page 1591:

"* * * Yet, on the other hand, where the error was flagrant and there was no other remedy available for its correction, relief by habeas corpus has sometimes been granted. As stated by Chief Justice Hughes in Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455, the rule which requires resort to appellate procedure for the correction of errors 'is not one defining power but one which relates to the appropriate exercise of power.' That rule is, therefore, 'not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' Id. 306 U.S. at page 27, 59 S.Ct. at page 446. That case was deemed to involve 'exceptional circumstances' by reason of the fact that it indicated "a conflict between state and federal authorities on a question of law involving concerns of large importance affecting their respective jurisdictions." Id. 306 U.S. at page 27, 59 S.Ct. at page 446. The Court accordingly entertained the writ to examine into the jurisdiction of the court to render the judgment of conviction.

"The same course was followed in Ex parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656, where petitioner was adjudged guilty of contempt for committing perjury. The Court did not require the petitioner to pursue any appellate route but issued an original writ and discharged him, holding that perjury without more was not punishable as a contempt. That situation was deemed exceptional in view of 'the nature of the case, of the relation which the question which it involves bears generally to the power and duty of courts in the performance of their functions, of the dangerous effect on the liberty of the citizen when called upon as a witness in a court which might result if the erroneous

doctrine upon which the order under review was based were not promptly corrected * * *.'"

See also the tentative classification of categories in the dissenting opinion of Justice Frankfurter in which habeas corpus has been entertained, and the reference therein to the opinion of Judge Learned Hand in United States ex rel. Kulick v. Kennedy, 2 Cir., 157 F.2d 811, 813, where he said: "We shall not discuss at length the occasions which will justify resort to the writ, where the objection has been open on appeal. After a somewhat extensive review of the authorities twenty-four years ago, I concluded that the law was in great confusion; and the decisions since then have scarcely tended to sharpen the lines. We can find no more definite rule than that the writ is available, not only to determine points of jurisdiction, stricti juris, and constitutional questions; but whenever else resort to it is necessary to prevent a complete miscarriage of justice."

See also the opinion of Judge Chesnut speaking for this court in Sunal v. Large, 4 Cir., 157 F.2d 165, in which the exceptional circumstances justifying a departure from the general rule are discussed.

The special and unusual circumstances of the present case justify the statement that the constitutional rights of the prisoners were so clearly violated, that the judgment against them would have been reversed by the Supreme Court of North Carolina if it had felt free to entertain their appeal. So much is clear from the two reversals in State v. Speller, 229 N.C. 67, 47 S.E.2d 537 and 230 N.C. 345, 53 S.E.2d 294, based on the same kind of jury question as that raised in the pending case; and no one can doubt from a consideration of Brunson v. North Carolina, 333 U.S. 851, 68 S.Ct. 634, 92 L.Ed. 1132, and numerous other decisions, that the same result would have been reached in the Supreme Court of the United States had that court reached the constitutional question involved.

If this be so, the insistence by the state upon a technical and trivial procedural step

as an impassable barrier to a review of the merits of the case seems to call loudly for the intervention of the federal court. The trial court of Pitt County at two important junctures in the trial stopped the defendants when they sought to raise the jury question. During the period when they were represented by counsel appointed by the court their attorneys allowed them to plead not guilty without raising any objection to the jury list of the county, with which it may be assumed they were familiar; and later when the attorneys selected by the prisoners raised the same point before the trial, they were told that the prisoners by pleading to the indictment, had lost the opportunity to challenge the jury as of right and that the matter lay within the discretion of the court. The court exercised this discretion against the prisoners. Again when the attorneys for the prisoners were one day late in filing the statement of their case on appeal the court struck their statement of the case from the record, so that the appeal on the jury question was effectively denied.

The court's strict application of the procedural rules in a capital case in these two instances can hardly be approved as a proper exercise of judicial discretion. The defendants merely asked for rulings which would have enabled them to obtain a review by the highest court of the state of the trial court's action on a grave constitutional question; and the relief could have been granted without interfering with the enforcement of the criminal laws of the state. It can hardly be doubted that the decision in each case lay within the discretion of the judge, but once it was taken, the Supreme Court of the state deemed itself powerless to interfere. Thus there is presented an impasse which can be surmounted only by a proceeding like that before this court. We have been told time and again that legalistic requirements should be disregarded in examining applications for the writ of habeas corpus and the rules have been relaxed in cases when the trial court has acted under duress or perjured testimony has been knowingly used by the prosecution, or a plea of guilty has been obtained by trick, or the defendant has been inadequately represented by counsel. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Darr v. Buford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761. It is difficult to see any material distinction in practical effect between these circumstances and the plight of the prisoners in the pending case who have been caught in the technicalities of local procedure and in consequence have been denied their constitutional right.

The writ should be granted in the pending case and the prisoners remanded to the state authorities to be tried in accordance with the law of the land.