STATE v. EMANUEL BITTINGS, ALIAS SPICE BITTINGS.

(Filed 20 June, 1934.)

1. **Criminal Law L d—Assignments of error must be based upon exceptions and be discussed in briefs in order to present question on appeal.**

   Assignments of error must be based upon exceptions duly taken in apt time during the trial and be discussed in appellant's brief in order for them to be considered on appeal, and these requirements are statutory, C. S., 643, as well as mandatory under the decisions, and where the assignments of error are not properly based upon exceptions aptly entered the case may be dismissed upon motion of the Attorney-General, but in the present appeal the assignments of error, although not properly presented, are considered because the life of the appellant is involved, and are found to be without merit.

2. **Same—**

   Exceptions to the trial court's statement of the contention of the State must be brought to the court's attention by defendant in apt time for correction or the exceptions will be deemed waived.

3. **Criminal Law I g—Statement of contention of the State based upon flight of defendant held not erroneous.**

   Where there is evidence that immediately after the time the crime was committed the defendant fled to other states it is proper for the State to contend that such flight was a circumstance indicating guilt, and the court's statement of such contention will not be held for error, the statement of the contention not being an undertaking by the court to state the law of flight.

4. **Criminal Law J a—**

   A judgment in a criminal prosecution may be arrested on motion duly made when, and only when, some fatal error or defect appears on the face of the record.

5. **Homicide G e—Evidence of defendant's guilt of murder in the first degree held sufficient to be submitted to jury.**

   Defendant admitted killing deceased intentionally with a deadly weapon, raising the presumption of an unlawful killing with malice, and the State's evidence of premeditation and deliberation, necessary to constitute murder in the first degree, is held sufficient to support the submission to the jury of the question of defendant's guilt of the capital felony.

APPEAL by defendant from *Devin, J.,* at January Term, 1934, of PERSON.

Criminal prosecution tried upon indictment charging the defendant with the murder of one T. M. Clayton.

The record discloses that on the morning of 7 September, 1933, the defendant, a tenant or share cropper, shot and killed his landlord under circumstances which the jury found to be murder in the first degree.

The evidence on behalf of the State tends to show that the defendant lived in a tenant house about fifty yards from the home of his landlord in Person County; that the two had cultivated some seven or eight acres of corn and tobacco that year on shares, each to get one-half of the crops, and the defendant to furnish himself; that a quantity of tobacco was in the barn on 7 September, which it was customary, on taking out of the barn, to put in the pack-house; that instead the defendant, with his two children, was putting the tobacco in his own house; that upon seeing what was being done, the landlord, accompanied by his wife, went to the home of the defendant and said: "Don't put that tobacco here in this house; there is no room in here; take every stick of it and carry it back to the pack-house"; that the defendant said something in reply, which the wife of the landlord could not understand, but in consequence of what was said, the landlord turned and remarked: "I have got no more to say" and started away from the house; that the defendant thereupon got his shotgun from over the door and shot the landlord, hitting him in the right side of the neck and killing him instantly.

It is also in evidence that throughout the cultivating season the defendant and the deceased discussed plans for working the crops; that when it was agreed, for example, that on tomorrow the tobacco should be primed, the defendant would disappear and stay away all day. "Spice seemed to think he was bound to make these trips; that he had to work for something to eat, he said. That would be his excuse." While not under contract to do so, the deceased told the defendant "he would give him some meat and bread, but after he found out the defendant was not trying to make anything, he refused to furnish him."

It is further in evidence that the deceased was unarmed at the time of the homicide; and that his wife called to the defendant not to shoot, just as he leveled his gun. The defendant immediately fled the vicinity, going first to Roanoke Rapids, then into Virginia, Pennsylvania, Ohio, and was finally arrested in Sharon, Pa.

The defendant took the stand in his own behalf and testified that he was to get half the tobacco and half the corn; that Mr. Clayton "wasn't able to furnish me rations, so I come over here to get Mr. Crowell, who promised he would furnish me bread to make a crop on. I raised a garden, corn, some cane and potatoes"; that on the morning of the homicide they were dividing the tobacco, the deceased not wanting the children of the defendant to handle his part: "I told him that my children might tear his up. He said he was going to the house and get his gun and stand there and watch them, he was not going to let them break his. . . . He had run them with his gun two or three

times when I was not there. I goes to the house, goes upstairs. The forty sticks were on the porch. I told the children to pass them on to the house to me and I would lay it upstairs and wait until Mr. Clayton got on better terms, and then I would move it out. Mr. Clayton come on the porch, knocked the little boy up against the house and stamped the tobacco out of his hand. He come running in the house crying, and my wife, she called me: 'You will have to come down here, he is down here fighting these children.' I came down and asked him to go way. So he wouldn't do it, he kept standing there fussing. I went on back in the house, upstairs. He was standing in front of the house. He called his wife: 'Sallie, come here. I want you to come here and hear the last words I tell the G—d—Negro before I blow his brains out.' He started in his pocket with his hands, and the gun was over my head. I took the gun, come down and shot him. No, sir, I never had any trouble with him before. He was standing in front of me when I shot him. . . . I didn't get mad with Mr. Clayton that morning. No need for me to get mad. I didn't have nowhere in God's world to put nothing but just in my house."

The defendant further testified that he went into the woods—not intending to seek refuge in flight—but when he saw in the Henderson paper that a mob was after him with guns and dogs, bloodhounds, he went away, intending to come home soon.

Verdict: Guilty of murder in the first degree.

Judgment: Death by electrocution.

The defendant appeals.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*M. Hugh Thompson, C. J. Gales and Cecil A. McCoy for defendant.*

STACY, C. J., after stating the case: If this were not a capital case, it would be necessary to affirm the judgment, on motion of the Attorney-General, for failure properly to present exceptive assignments of error. *S. v. Freeze*, 170 N. C., 710, 86 S. E., 1000; *S. v. Kelly, ante,* 660. In defense of counsel now appearing for the prisoner, however, it should be said they did not represent him at the trial or in the court below.

No exceptions were taken to the admission or exclusion of evidence and none properly to the charge. There was a formal motion to set aside the verdict and one in arrest of judgment, to which exceptions were entered, but otherwise the assignments of error are without exceptions to support them.

Speaking to a similar situation in *Boyer v. Jarrell,* 180 N. C., 479, 105 S. E., 9, the Court, quoting with approval from *Harrison v. Dill,* 169 N. C., 542, 86 S. E., 518, said: "The object of an assignment of error is not to create a new exception, which was not taken at the hearing, but to select from those which were taken such as the appellant then relies on after he has given more deliberate consideration to them than may have been possible during the progress of the trial or hearing. The assignment of error, therefore, must be based upon the exception duly taken at the time it was due in the orderly course of procedure, and should coincide with and not be more extensive than the exception itself. In other words, no assignment of error will be entertained which has not for its basis an exception taken in apt time."

Again, in *In re Will of Beard,* 202 N. C., 661, 163 S. E., 748, it was said: "The assignments of error are presumably based upon exceptions in the record, though they are neither brought foward nor specifically pointed out. *Merritt v. Dick,* 169 N. C., 244, 85 S. E., 2. This falls short of the requirements of Rule 19, sec. 3, of the Rules of Practice in the Supreme Court, 200 N. C., 824; *Rawls v. Lupton,* 193 N. C., 428, 137 S. E., 175. Only exceptive assignments of error are considered on appeal. *Dixon v. Osborne,* 201 N. C., 489; *Sanders v. Sanders,* 201 N. C., 350, 160 S. E., 289; *S. v. Freeze,* 170 N. C., 710, 86 S. E., 1000. The Constitution, Art. IV, sec. 8, empowers the Supreme Court 'to review on appeal any decision of the courts below, upon any matter of law or legal inference'; and this is to be presented in accordance with the mandatory rules of the Supreme Court. *Calvert v. Carstarphen,* 133 N. C., 25, 45 S. E., 353. The Court has not only found it necessary to adopt rules of practice, but equally necessary to enforce them and to enforce them uniformly. *Pruitt v. Wood,* 199 N. C., 788, 156 S. E., 126; *Byrd v. Southerland,* 186 N. C., 384, 119 S. E., 2.

"Furthermore, 'exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.' Rule 28; *Gray v. Cartwright,* 174 N. C., 49, 93 S. E., 432. The relation between appellants' brief and the record is discernible only after a voyage of discovery. *Sturtevant v. Cotton Mills,* 171 N. C., 119, 87 S. E., 992. For this, we are furnished no guides."

Likewise, in *Rawls v. Lupton,* 193 N. C., 428, 137 S. E., 175, and *Cecil v. Lumber Co.,* 197 N. C., 81, 147 S. E., 735, attention was called to the fact that these requirements are statutory, C. S., 643, as well as mandatory under numerous decisions of the Court. The Supreme Court on appeal exercises only appellate jurisdiction, and it is necessary that the errors alleged should be presented as the law directs. *S. v. Webster,* 121 N. C., 586, 28 S. E., 254.

Objections to the admission of incompetent evidence, or the exclusion of competent testimony, may be waived by failure to object in apt time. *S. v. Steen,* 185 N. C., 768, 117 S. E., 793. Similarly, other errors, not appearing on the face of the record proper, may be waived by failure to note objections or properly to assign errors and discuss them on brief. *Merritt v. Dick,* 169 N. C., 244, 85 S. E., 2.

In the present case, for instance, if the defendant wished to challenge the sufficiency of the evidence to show premeditation and deliberation beyond a reasonable doubt, as indicated on the argument, motion to nonsuit under C. S., 4643, on the capital charge, should have been lodged at the close of the State's case, exception noted, if overruled, and the motion renewed at the close of all the evidence, exception again noted, if overruled; and, in preparing the statement of case on appeal, an assignment of error should have been made based upon this second exception. *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395; *S. v. Sigmon,* 190 N. C., 687, 130 S. E., 854; *S. v. Killian,* 173 N. C., 792, 92 S. E., 499; *Nowell v. Basnight,* 185 N. C., 142, 116 S. E., 87; *Batson v. Laundry,* 202 N. C., 560, 163 S. E., 600; *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356. But no such exception and assignment of error appear on the record. In lieu of this, the defendant might have moved for a directed verdict on the capital charge, noted an exception, if overruled, and predicated an assignment of error upon this exception. But the record contains no such exception and assignment of error. The question therefore is not properly presented.

An attentive reading of the opinion in *Rawls v. Lupton, supra,* ought to acquaint appellants with the mechanics of taking exceptions, bringing them forward in the assignments of error, and preserving them by discussing them on brief, as required by Rules 19(3), 21 and 28 of the Rules of Practice in the Supreme Court, 200 N. C., 824-827-831. See, also, *S. v. Lea,* 203 N. C., 13, 164 S. E., 737; *Carter v. Bryant,* 199 N. C., 704, 155 S. E., 602, and *Riggan v. Harrison,* 203 N. C., 191, 165 S. E., 358.

But treating the assignments of error as supported by exceptions, they appear to be without merit. The court in charging the jury, and while stating the contentions of the State, said: "  .  .  .  that then his flight from the scene and his flight as far as Pennsylvania was a circumstance indicating, in recognition of the fact of his own guilt." This is assigned as error.

There are two reasons why the assignment cannot be sustained. In the first place, exceptions to the statement of contentions, not called to the attention of the judge at the time, so as to give him an opportunity to correct them, if erroneous, are treated as waived or ineffectual on

STATE v. BITTINGS.

appeal. *S. v. Lea,* 203 N. C., 13, 164 S. E., 737; *S. v. Sloan,* 199 N. C., 598, 155 S. E., 258; *S. v. Steele,* 190 N. C., 506, 130 S. E., 308; *S. v. Parker,* 198 N. C., 629, 152 S. E., 890; *Mfg. Co. v. Building Co.,* 177 N. C., 103, 97 S. E., 718; *S. v. Little,* 174 N. C., 800, 94 S. E., 1; *S. v. Foster,* 172 N. C., 960, 90 S. E., 785. In the next place, the contention itself was legitimate. *S. v. Beal,* 199 N. C., 278, 154 S. E., 604; *S. v. Mull,* 196 N. C., 351, 145 S. E., 677; *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395; *S. v. Stewart,* 189 N. C., 340, at p. 347, 127 S. E., 260; *S. v. Malonee,* 154 N. C., 200, 69 S. E., 786. The court was not undertaking to state the law of flight in giving the State's contention. *S. v. Mull, supra; S. v. Steele, supra.*

It is not perceived upon what theory error was committed in refusing to set aside the verdict or to arrest the judgment. A judgment in a criminal prosecution may be arrested, on motion duly made, when— and only when— some fatal error or defect appears on the face of the record. *S. v. McKnight,* 196 N. C., 259, 145 S. E., 281. The trial seems to have been conducted in strict conformity to the law, and with due regard for the rights of the defendant.

The intentional killing with a deadly weapon, admitted by the defendant, raised sufficient presumptions to establish an unlawful killing with malice, which is murder in the second degree, *S. v. Keaton ante,* 682, and the record contains ample evidence to support the finding of the additional elements of premeditation and deliberation necessary to constitute murder in the first degree. *S. v. Evans,* 198 N. C., 82, 150 S. E., 678; *S. v. Miller,* 197 N. C., 445, 149 S. E., 590; *S. v. Steele,* 190 N. C., 506, 130 S. E., 308; *S. v. Merrick,* 172 N. C., 870, 90 S. E., 257; *S. v. Cameron,* 166 N. C., 379, 81 S. E., 748; *S. v. McClure,* 166 N. C., 321, 81 S. E., 458; *S. v. Daniels,* 164 N. C., 464, 79 S. E., 953; *S. v. Exum,* 138 N. C., 599, 50 S. E., 283; *S. v. Thomas,* 118 N. C., 1113, 24 S. E., 431; *S. v. Norwood,* 115 N. C., 789, 20 S. E., 712.

The defendant's plea of self-defense was rejected by the jury. *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663. It is observed that his wife and children were not called as witnesses in his behalf. It is not known whether they would have corroborated his testimony. This was a matter for his counsel to decide.

There is nothing appearing on the record which would warrant the Court in disturbing the verdict or the judgment. They will therefore be upheld.

No error.