## STATE v. CHARLES WARD.

(Filed 23 March, 1955.)

**1. Homicide § 25—**

Evidence tending to show that defendant and deceased, with others, were engaged in a drinking party characterized by bad temper, fighting, and scuffling, that defendant had a shotgun loaded with two shells, that a neighbor saw defendant shoot one time in the direction of deceased and shortly thereafter found deceased at that place *in extremis*, and that thereafter the gun was found with both shells exploded, *is held* sufficient to overrule motion for nonsuit in a prosecution for homicide.

**2. Homicide § 17: Criminal Law § 34a—Declarations held incompetent as hearsay, and admission of testimony thereof was prejudicial.**

In a prosecution for homicide committed during a drinking party, testimony of a declaration by defendant's brother to a neighbor that defendant had a gun and declarant was afraid he would kill deceased, and testimony of a declaration by defendant's son that his father was drunk and the son wanted the neighbor to come over to see if he could do anything with him, and testimony of a deputy sheriff that one of the men from the party stated that they had come for him when defendant went into the house to get a gun, none of the declarants being witnesses at the trial, *held* incompetent as hearsay and the admission of the testimony was reversible error.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Pless, J.,* September Term 1954 of MITCHELL.

Criminal prosecution, tried on bill of indictment charging defendant with the murder of Forest Ward, his brother.

The solicitor announced that the State would not ask for verdict of murder in the first degree but for a verdict of murder in second degree or manslaughter as the evidence might warrant.

The State offered evidence tending to show that on the night of 20 February, 1954, there was a drinking party at the home of Charles Ward, the

defendant, who lived on the highway near Bakersville. Present besides the defendant and his wife Lucille and a 13-year-old son were defendant's two brothers, Forest Ward and Harold Ward, and three other visitors, Burleson, Buchanan and Ledford. After exhausting the supply of liquor and replenishing it by an incursion to a neighboring county, the men continued their potations until late in the night. It was testified that the defendant was intoxicated and angry. There was fighting and scuffling, particularly between Forest and Harold Ward in which Charles Ward engaged. The defendant Charles Ward had a double-barreled shotgun loaded with two shells containing buckshot. He had borrowed this gun several days before from a neighbor, Malone Gouge. Whisky and bad temper finally made violence seem imminent, so much so that shortly after midnight, Burleson, Buchanan and Ledford left the house and drove to Bakersville to summon the sheriff. When they left the scene they testified Forest Ward and Harold Ward were out near Harold's parked automobile about 17 steps from defendant's house, and Charles Ward was going into the house. They knew he had a gun. When they returned with the sheriff's deputy, about 20 minutes later, they found the defendant and his brothers gone. In the meantime, shortly after these men had gone for the sheriff, Malone Gouge, who lived in a house across the road some 200 yards away, was awakened by Harold Ward and Charles Ward's young son who had come to him for help. Gouge arose and, looking out, saw Charles Ward, the defendant, come out of his house onto his lighted porch and fire a gun. The gun was pointed away from the house. "I saw Charlie shoot to where Forest Ward fell and where he was when I came over." Gouge was unable to see anyone else at that time. He then dressed, and as he came out a few minutes later he saw Charles Ward scuffling with Forest Ward near a parked automobile. No one else was present. Gouge went at once to the automobile and as he reached it Forest Ward sank down to the ground, apparently *in extremis,* and, as Gouge expressed it, "bloody as he could be." He did not see the gun at that time. Gouge said to the defendant, "You have killed your brother." He replied, "I didn't do it," but Gouge said, "I seen you shoot." Defendant said "Lucille was the cause of it."

Gouge then placed the wounded man in the automobile with the help of Harold, who had come up, and the defendant and drove to Dr. Berry's clinic in Bakersville. Forest Ward died a few hours later and the doctor ascribed his death to shock and loss of blood. It appeared that the discharge of the load of buckshot from the gun struck the deceased on the right side and extended through his leg, some of the shot striking the left knee. The diameter of the hole was only slightly larger than that of the gun barrel, and the clothing and skin showed signs of powder burns. Malone Gouge testified he did not remember hearing a second shot but

said "there could have been one." Gouge later found the gun in his home with both shells exploded. The defendant told the sheriff next day that he and Forest Ward were scuffling over the gun, and it went off, that it was an accident.

Over objection Gouge was permitted to testify that when Harold Ward and Charles Ward's son came to his house that night Harold said, "Charles has a gun and I am afraid he will kill Forest." Gouge also testified over defendant's objection that defendant's son said, "Daddy is drunk. I want you to come over there and see if you can do anything with him." Neither of these testified.

The defendant also objected to the testimony of the sheriff that one of the men who came for him that night told him that "Charlie went in the house to get a gun and they left."

The defendant did not go on the stand and offered no evidence.

The jury returned verdict of guilty of manslaughter. From judgment imposing sentence the defendant appealed.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Warren Pritchard, G. D. Bailey, and W. E. Anglin for defendant, appellant.*

DEVIN, J. The defendant assigns as error the denial by the trial judge of his motion for judgment as of nonsuit. He contends the evidence was insufficient to warrant its submission to the jury.

The evidence offered by the State was in some respects circumstantial, and the sequence of events was not always clear, but we think this evidence considered in the light most favorable for the State was sufficient to withstand the demurrer, and that the ruling below should be upheld.

As was said by this Court in *S. v. Johnson,* 199 N.C. 429, 154 S.E. 730, "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." *S. v. Boyd,* 223 N.C. 79, 25 S.E. 2d 456.

However, we think there was error in the admission, over defendant's objection, of the unsworn declarations of Harold Ward and defendant's son with respect to defendant's attitude toward the deceased, and that this was prejudicial. Likewise, the testimony of the sheriff that one of the men who came to him that night told him the defendant went in his house to get a gun, and they thereupon left, would seem to violate the rule against hearsay evidence. *S. v. Lassiter,* 191 N.C. 210, 131 S.E. 577;

*Teague v. Wilson,* 220 N.C. 241, 17 S.E. 2d 9; *S. v. Black,* 230 N.C. 448, 53 S.E. 2d 443; Stansbury, Evidence, Sec. 138.

As we think the defendant is entitled to another hearing, we refrain from further elaboration or analysis of the evidence.

New trial.

BARNHILL, C. J., took no part in the consideration or decision of this case.