STATE *v.* SMITH AND STATE *v.* AUGBURN.

———————

STATE v. WALTER R. SMITH AND STATE v. WILLIAM AUGBURN.

(Filed 4 March, 1959.)

**1. Criminal Law § 70—**

Defendants admitted that on the afternoon in question they were riding in a particular car, but denied they were at the scene or committed the crime. The court admitted testimony of a witness that a boy, who was at the scene of the crime, told the witness that he saw a car of like make and color leave the scene immediately after the crime was committed. *Held:* The testimony was incompetent as hearsay, and since it related to a controverted and material fact, its admission was prejudicial.

**2. Criminal Law § 159—**

An assignment of error not supported by any argument or authority in the brief is deemed abandoned.

**3. Burglary § 4—**

Evidence in this case *held* sufficient to be submitted to the jury on the charge of burglary in the first degree, and there was no evidence that the offense was burglary in the second degree.

**4. Burglary § 6—**

G.S. 15-171, requiring the court in a prosecution for burglary in the

first degree to submit the question of defendant's guilt of burglary in the second degree, notwithstanding the absence of any evidence of defendant's guilt of such degree of the crime, was repealed by Chapter 100, Session Laws of 1953.

APPEAL by defendants from *Frizzelle, J.,* October Term, 1958, of HALIFAX.

Criminal prosecution on separate (identical) two-count bills of indictment against Walter R. Smith and William Augburn, respectively, consolidated (by consent) for trial.

The first count charges the defendant therein named with the capital felony of burglary in the first degree, specifically that he "on the 25th day of August A. D. 1958, about the hour of 8 p.m. in the night of the same day, with force and arms, at and in the county aforesaid the dwelling house of one C. C. Tynes, there situate, and then and there actually occupied by one C. C. Tynes and George Cherry feloniously and burglariously did break and enter, with intent, the goods and chattels of the said C. C. Tynes in the said dwelling house then and there being, then and there feloniously and burglariously to steal, take and carry away money and other goods against the peace and dignity of the State."

The second count, which relates to the same occasion, charges the defendant therein named with the larceny of $180.00.

Upon arraignment, defendants entered pleas of not guilty.

The State offered evidence tending to show that defendants committed the crimes charged. The testimony of defendants and of witnesses offered by defendants tended to establish alibis.

The jury, as to each defendant, returned verdicts as follows: On the first count, guilty of burglary in the second degree; on the second count, guilty.

The court pronounced judgment, as to each defendant, as follows: On the first count, imprisonment "in the State's Prison for a term of not less than 25 years nor more than 30 years"; on the second count, imprisonment "in the State's Prison for a term of not less than 12 months nor more than two years," this sentence to run concurrently with the sentence imposed on the first count.

Defendants excepted and appealed.

*Attorney General Seawell and Assistant Attorney General Mc-Galliard, for the State.*

*Fountain, Fountain, Bridgers & Horton for defendants, appellants.*

BOBBITT, J. The prosecuting witness, C. C. Tynes, testified that

two masked men, whom he did not know and had not previously seen, obtained entrance by fraud and forced their way into his home and repeatedly assaulted him (one holding a shotgun on him) until they got his money and two watches. This occurred, after dark, on the night of Monday, August 25, 1958.

Tynes lived in Halifax County, 2½ miles from Hobgood and 10 or 10½ miles from Scotland Neck. Tynes and George Cherry, an eight year old boy, the son of Tynes' wife's sister, were the only occupants of the Tynes home when the crimes were committed.

Tynes testified: "I did not see the automobile when it left. . . . He (George Cherry) got up and looked out the window when the automobile drove off."

Neighbors called the officers. Tynes, who had been injured, was taken to the hospital.

On the following Friday, Tynes went to the Halifax County Jail. Meanwhile, defendants and Theodore Augburn, brother of defendant William Augburn, had been arrested and charged with first degree burglary. At the Halifax County Jail, three men were brought into the presence of Tynes. He identified the defendants as the two men who had forced their way into his home and assaulted and robbed him.

There was evidence that Theodore Augburn owned a 1952 "two-toned red and dark colored Buick Roadmaster." "The Buick car is red on the bottom and the top is black."

Defendants, also Theodore Augburn, were taken into custody on Monday night, August 25th, in Scotland Neck. All denied knowledge of the crime. However, all admitted that they had been riding that afternoon (to and from Durham) in Theodore's Buick.

An investigating officer was permitted to testify, over objection, that the little boy (presumably George Cherry) *told* him out there (at Tynes' house) that night "about a red Buick car going away from there," and that, based on this information and on information that "these two defendants had been riding around in a red Buick," he radioed instructions to another officer in Scotland Neck to pick up the defendants and Theodore Augburn.

George Cherry did not testify. He lived with his mother in Tarboro. When the trial was in progress, George Cherry was in school.

Whether Theodore's red Buick was in front of Tynes' house and was driven therefrom immediately after the crimes were committed was a material and sharply controverted fact. It was so regarded by the State. Indeed, the State, by testimony as to tire tracks "out in the mud in front of Mr. Tynes' house," undertook to identify Theodore's red Buick as the car used by the perpetrators of the crimes.

But there was no testimony, except the statement attributed to George Cherry, that anyone had seen a red Buick at the Tynes home at or about the time the crimes were committed.

The testimony that the little boy *said* that he saw a red Buick going away from the Tynes home, whether considered alone or in conjunction with the evidence as to tire tracks, strongly supported the State's contention. The statement attributed to the boy materially influenced the investigating officer's decision to order the arrest of defendants. It is not unreasonable to assume that the jury gave equal weight thereto.

Since the probative value of the challenged testimony depends wholly upon the truth of the matters asserted by the little boy in the statement attributed to him, it is clear that it was incompetent as hearsay and should have been excluded. *Gurganus v. Trust Co.*, 246 N.C. 655, 658, 100 S.E. 2d 81, and cases cited; *S. v. Ward*, 241 N.C. 706, 86 S.E. 2d 275, and cases cited; Stansbury, North Carolina Evidence, § 138. Its admission, over defendants' objection, was prejudicial and entitles defendants to a new trial.

The court, in charging the jury, reviewed the respective contentions with reference to the failure of the State to call George Cherry as a witness. These portions of the charge would seem to accentuate rather than to dispel the prejudicial effect of the incompetent evidence.

Defendants assigned as error the denial of their motion for judgment of nonsuit as to burglary in the first degree. In their brief, no reason or argument is stated and no authority is cited in support of this assignment. While this assignment is deemed abandoned, *S. v. Gordon*, 241 N.C. 356, 362, 85 S.E. 2d 322, it seems appropriate to say that the evidence, when considered in the light most favorable to the State, was sufficient to warrant the submission of burglary in the first degree. (As to entry obtained by fraud, see *S. v. Johnson*, 61 N.C. 186; *S. v. Foster*, 129 N.C. 704, 40 S.E. 209; 2 Wharton's Criminal Law and Procedure (1957), § 415.) Indeed, there was no evidence of burglary in the *second* degree. *S. v. McAfee*, 247 N.C. 98, 100 S.E. 2d 249.

There was plenary evidence that two men committed the crimes charged in the bills of indictment. Upon trial, the crucial question was whether defendants were the men involved. It is unnecessary to review the evidence offered by defendants except to say that it tends to show that each of them was elsewhere, not at the Tynes home, when the alleged crimes were committed.

Since a new trial is awarded for the reason stated, we do not consider defendants' other assignments of error. However, it seems ap-

propriate to call attention to the fact that (former) G.S. 15-171, which was explained and applied by the court in charging the jury, was repealed by Ch. 100, Session Laws of 1953. See *S. v. McAfee, supra.*

New trial.