### STATE v. A. E. PERRY.

(Filed 29 April, 1959.)

**1. Criminal Law § 167:   Grand Jury § 1—**
    Findings of fact by the trial court to the effect that persons of defendant's race were not excluded from the jury lists or from the grand jury because of race, and that there had been no racial discrimination in the selection of grand jurors, are conclusive on appeal if supported by competent evidence, in the absence of some pronounced ill consideration of the evidence by the trial court.

**2. Constitutional Law § 29:   Grand Jury § 1— Evidence held to support finding that there was no racial discrimination in selection of grand jury.**
    Where, in support of defendant's motion to quash the bill of indict-

ment on the ground that persons of his race were arbitrarily excluded from the grand jury, defendant's evidence tends to show that the jury lists of the county were made up of the names of qualified persons without regard to race, that the grand jury was selected therefrom in accord with statutory procedure, G.S. 9-1, G.S. 9-2, G.S. 9-3, G.S. 9-24, G.S. 9-25, and that during the prior eight years two Negroes had served on the grand jury, without any evidence that any qualified Negro had been excluded at any time from serving on the grand and petit juries of the county, the evidence supports the court's finding to the effect that there had been no racial discrimination in the selection of the grand jury returning the indictment against defendant, and the denial of the motion to quash is affirmed.

### 3. Criminal Law § 167—

Where the crucial findings of fact are supported by the evidence and support the court's conclusions of law, the order will not be disturbed even though the evidence is not sufficiently clear to justify a subordinate finding, and such subordinate finding will be amended in conformity with the evidence, and the order affirmed.

### 4. Grand Jury § 1:    Constitutional Law § 29—

A Negro objecting to a grand or petit jury because of alleged discrimination against Negroes in its selection must affirmatively prove that qualified Negroes were intentionally excluded from the jury because of their race or color.

### 5. Same—

A Negro accused of crime has no right to demand that the grand or petit jury shall be composed in whole or in part of citizens of his own race nor has he the right to proportional representation of his race thereon, but only that Negroes not be intentionally excluded therefrom because of their race or color.

### 6. Criminal Law § 167—

Where the findings of the trial court are amply supported by the evidence, they will not be disturbed on the ground that some incompetent evidence was introduced, since it will be presumed that the court disregarded the incompetent evidence in making its findings.

### 7. Abortion § 3—

The evidence in this case *is held* amply sufficient to be submitted to the jury in a prosecution under G.S. 14-45.

### 8. Same:    Criminal Law § 52—

In a prosecution under G.S. 14-45, hypothetical questions asked an admitted medical expert witness, based upon a full and fair recital of all relevant and material facts theretofore introduced in evidence, as to whether the prosecutrix had had a miscarriage, and if so, what was the cause of it, *held* competent.

### 9. Criminal Law § 159—

Assignments of error not supported by any reason or argument or citation of authority in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by defendant from *Olive, J.,* November Criminal Term, 1958 of STANLY.

Criminal prosecution on a bill of indictment charging the defendant A. E. Perry on 4 October 1957 with using drugs and instruments with intent thereby to procure the miscarriage of Lillie Mae Rape, a pregnant woman, — a violation of N.C.G.S. 14-45.

Prior to pleading to the bill of indictment, the defendant moved to quash it for reasons which will be set forth in the opinion. The trial court denied the motion to quash. Whereupon, the defendant pleaded Not Guilty. The jury returned a verdict of Guilty as charged.

From a judgment of imprisonment the defendant appeals.

*Malcolm B. Seawell, Attorney General, T. W. Bruton, Assistant Attorney General, and Ralph Moody, Assistant Attorney General, for the State.*

*Taylor & Mitchell for defendant, appellant.*

PARKER, J.  This action was here on a former appeal by the defendant. *S. v. Perry,* 248 N.C. 334, 103 S.E. 2d 404. An examination of the case on the former appeal and of the instant case shows that the bill of indictment in this case is the same bill of indictment that was before this Court on the former appeal of this case.

This appears from our decision of the former appeal: The defendant is a negro doctor. Lillie Mae Rape is a white woman. The bill of indictment, which charges that the offense was committed in Union County on 4 October 1957, was found on 28 October 1957 by the grand jury of Union County at the October 1957, Mixed Term Union County Superior Court, which convened on the day the indictment was found. The defendant on 28 October 1957, in apt time, before pleading to the bill of indictment, (*S. v. Linney,* 212 N.C. 739, 194 S.E. 470; *S. v. Speller,* 229 N.C. 67, 47 S.E. 2d 537), filed a written motion to quash the bill of indictment, for the reason that negroes because of their race have been systematically excluded from serving upon grand juries of Union County for a long period of time, and that negroes because of their race were excluded from serving upon the grand jury of Union County at the term of court when the bill of indictment was found, and that such systematic exclusion of members of the defendant's race from the grand juries of Union County is a violation of his rights guaranteed to him by the due process and equal protection clauses of the Federal Constitution, and by Art. I, Sec. 17, of the State Constitution. On the day the bill of indictment was found, the trial court ordered a special venire of 50 persons from

Anson County to appear in court on 30 October 1957, from which a trial jury was to be selected in the case. On 30 October 1957, the State announced it was ready to proceed with the trial. Whereupon, counsel for the defendant requested that they be given time and opportunity to inquire into the alleged systematic exclusion of negroes from grand jury service in Union County, and in support of their request and motion to quash the bill of indictment filed an affidavit by one of defendant's counsel. The material parts of said affidavit are summarized in our opinion on the former appeal, and need not be repeated here. The trial court then found as a fact that the defendant had offered no evidence on his motion to quash the bill of indictment, except this affidavit, and denied the motion. To such denial the defendant excepted. The defendant then pleaded Not Guilty. He was convicted by the jury, and sentenced to a term of imprisonment by the court. From such sentence he appealed to the Supreme Court.

The Court on the former appeal reversed the verdict and judgment of imprisonment, and closed its opinion with this language:

"Whether a defendant has been given by the court a reasonable time and opportunity to investigate and produce evidence, if he can, of racial discrimination in the drawing and selection of a grand jury panel must be determined from the facts in each particular case. After a careful examination of all the facts in the instant case, it is our opinion that the trial court denied the defendant a reasonable opportunity and time to investigate and produce evidence, if such exists, in respect to the allegations of racial discrimination as to the grand jury set forth in the motion to quash and in the supporting affidavit of Samuel S. Mitchell. Whether the defendant can establish the alleged racial discrimination or not, due process of law demands that he have his day in court on this matter, and such day he does not have unless he has a reasonable opportunity and time to investigate and produce his evidence, if he has any.

"The judgment and verdict below are reversed, and the case is remanded for further proceedings. In the Superior Court the defendant will have the opportunity to present the evidence, if any, that he may have as to the alleged racial discrimination in the grand jury panel. If the trial court at such hearing then finds there was no racial discrimination, the trial will proceed on the present indictment. If the trial judge then finds there was racial discrimination in the grand jury panel, and quashes the indictment, the defendant is not to be discharged. He will be held until an indictment against him can be found by an unexceptionable grand jury. S. v. Speller, 229 N.C. 67, 47 S.E. 2d 537."

Our opinion on the former appeal was filed 7 May 1958. At the 25 August Term 1958 of the Superior Court of Union County, the defendant, pursuant to N.C.G.S. 1-84, made a motion for removal of his case for trial to some adjacent county, and supported the motion by an affidavit suggesting that there are probable grounds to believe that a fair and impartial trial of the case cannot be had in Union County. Judge Olive presiding granted the motion, and entered an order decreeing that the case be removed to the Superior Court of Stanly County for trial at the 24 November 1958 Term, or at a later term.

At the 24 November Term 1958 of Stanly Superior Court, the defendant, again in apt time, before pleading to the bill of indictment, moved to quash the bill of indictment on the identical grounds that he did at his former trial at the October 1957, Mixed Term of Union County, as above stated. In his motion to quash the defendant requested that the trial court issue subpoenas and subpoenas *duces tecum* requiring the presence in court of the Clerk of the Superior Court of Union County, the County Commissioners of Union County, the Sheriff of Union County, the Tax Collector of Union County, and the County Accountant of Union County as witnesses to be examined by him in respect to his contention that members of the negro race were purposely excluded by reason of their race from the grand jury of Union County which indicted him, and that such officials bring with them "certain records, documents and papers pertaining to Union County Grand Jury Compositions since 1936 through the present year."

When the motion to quash the bill of indictment came on to be heard, the defendant placed on the stand and examined J. Hampton Price, Clerk of the Superior Court of Union County; B. F. Niven, the Tax Collector of Union County; Roy J. Moore, Tax Accountant and Tax Supervisor of Union County, and also Clerk to the Board of County Commissioners of Union County; James R. Braswell, Chairman of the Board of County Commissioners of Union County; and Shelly Griffin, a Deputy Sheriff of Union County for eight years, and in charge of the courtroom when court is in session. Ben Wolfe, Sheriff of Union County, did not appear, but sent a statement by a reputable physician to the effect that he is receiving treatment for severe high blood pressure, has frequent blackout attacks, and has been advised by his physician not to appear in court for any reason because of his health. The Record shows that these witnesses brought with them many and voluminous records, documents and papers pertaining to the composition of Union County Grand Juries for many years and up to the time of the hearing of defendant's motion to quash the bill

of indictment. Defendant offered no other witnesses than those named above.

Judge Olive having heard all the evidence and arguments of counsel made the following finding of facts:

"1. That the said Grand Jury at the October 1957 Term of Union County Superior Court was regularly drawn and constituted as provided by the North Carolina Statute and there was no systematic, purposeful, intentional or arbitrary exclusion of any qualified person from said jury by reason of race, or otherwise.

"2. That adult negroes constitute approximately 12½% of the total adult population of Union County, North Carolina.

"3. That, although there was no member of the colored race on the Grand Jury of Union County in 1957 (the Grand Jury of said County was chosen for a period of one year as provided by law), members of the colored race served on the Grand Jury at various times before and subsequent to 1957; and members of the colored race have served on the trial panel of said court regularly before, including and subsequent to 1957.

"4. That no evidence was offered by movant that any qualified person to serve as a juror was wrongfully excluded from serving on the Grand and Petit juries of Union County at any time.

"5. That the Bill of Indictment in this case was regularly and legally found and returned by a duly and legally constituted Grand Jury of Union County, North Carolina, at the October 1957 Term of Superior Court of said County.

"6. That none of the movant's constitutional rights were violated or abridged in the selection of the Grand Jury which found and returned the Bill of Indictment in this case."

Whereupon Judge Olive denied the motion to quash the bill of indictment.

Defendant assigns as errors Judge Olive's findings of fact Numbers 1, 3, 4, 5 and 6, for the reason that these findings of fact are contrary to the evidence offered by the defendant, and to all the competent evidence offered during the hearing of the motion to quash the bill of indictment. Defendant neither excepts to, nor assigns as error, the finding of fact Number 2 "that adult negroes constitute approximately 12½% of the total adult population of Union County, North Carolina."

The findings of fact of Judge Olive are conclusive on appeal, if supported by competent evidence, "in the absence of some pronounced ill consideration" of the evidence by Judge Olive. *S. v. Koritz,* 227 N.C. 552, 43 S.E. 2d 77, cert. denied, 332 U.S. 768, 92 L. Ed. 354;

*S. v. Speller,* 231 N.C. 549, 57 S.E. 2d 759, cert. denied, 340 U.S. 835, 95 L. Ed. 613; *S. v. Kirksey,* 227 N.C. 445, 42 S.E. 2d 613; *S. v. Bell,* 212 N.C. 20, 192 S.E. 852; *S. v. Walls,* 211 N.C. 487, 191 S.E. 232; *S. v. Cooper,* 205 N.C. 657, 172 S.E. 199; *Akins v. Texas,* 325 U.S. 398, 89 L. Ed. 1692; *Thomas v. Texas,* 212 U.S. 278, 53 L. Ed. 512.

Prior to 1947, it was provided by N.C.G.S. 9-1 that the tax returns of the preceding year for the county should constitute the source from which the jury list should be drawn, and this was then the only prescribed source, and from this source shall be selected for the jury list the names of all such persons as have paid all the taxes assessed against them for the preceding year and are of good moral character and of sufficient intelligence. To meet the constitutional change of the previous year election, N. C. Const., Art. I, Sec. 13, making women eligible to serve on juries, N.C.G.S. 9-1 was amended in 1947, 1947 Session Laws, Ch. 1007, enlarging the source to include not only the tax returns of the preceding year but also "a list of names of persons who do not appear upon the tax lists, who are residents of the county and over twenty-one years of age," to be prepared in each county by the Clerk of the Board of Commissioners. The 1947 amendment struck out the provision as to the payment of taxes for the preceding year, and further provided that names for the jury list shall be secured from such sources of information as are deemed reliable which will provide the names of persons of the county above twenty-one years of age residing within the county qualified for jury duty. Excluded from the list are persons who have been convicted of crime involving moral turpitude, or are *non compos mentis*.

N.C.G.S. 9-2 provides that the jury list shall be copied on small scrolls of paper of equal size and put into the jury box. N.C.G.S. 9-3 provides that at least twenty days before a term of the Superior Court, the Board of County Commissioners shall cause to be drawn from the jury box by a child not more than ten years of age the required number of scrolls, and the persons who are inscribed on such scrolls shall serve as jurors at the term of the Superior Court next ensuing such drawing.

N.C.G.S. 9-24 provides that a Judge of the Superior Court presiding over a term of court at which a grand jury is to be selected "shall direct the names of all persons returned as jurors to be written on scrolls of paper and put into a box or hat and drawn out by a child under ten years of age; whereof the first eighteen drawn shall be a grand jury for the court; and the residue shall serve as petit jurors for the court." N.C.G.S. 9-25, Grand Juries in Certain Counties, provides as to Union County as follows: "A grand jury for Union County

shall be selected at each February Term of the Superior Court in the usual manner by the presiding judge, which said grand jury shall serve for a period of one year from the time of their selection."

The grand jury which indicted the defendant at the October 1957, Mixed Term of the Union County Superior Court, was selected, sworn and impaneled at the February Term 1957 of Union County Superior Court, pursuant to N.C.G.S. 9-25, which appears in the Record of this case on the former appeal.

J. Hampton Price, Clerk of the Superior Court of Union County for 9 years, and prior to that County Tax Collector of Union County for about 13 years, testified in substance as follows: I have the jury book with me covering the period from 1945 up to the present. I think the Minutes of the Court took care of the jury up until that time. I have the Minutes Docket Book of the Court back to 1936. I am familiar with most of the names on the jury list since I have been Clerk. Ike Montgomery, a negro, was on the grand jury in 1954. Lex Houston, a negro, is on the grand jury in 1958. There were other negroes in the panels, but when you are drawing them by lot it is not always possible to get a negro on the grand jury, due to the small ratio between negroes and whites in Union County. From 1950 to 1958, both inclusive, no negroes served on the grand juries of Union County, except Ike Montgomery and Lex Houston. In 1942 there is the name of Curtis Smith, and I think we have a Curtis Smith, white, and a Curtis Smith, negro. In 1945 there is one W. I. Helms, and I don't know if he is a negro or white. In 1948 there is a Hoyle Helms, and I don't know if he is a negro or white. In 1939 there is a Curtis Helms, and I don't know if he is a negro or white.

B. F. Niven, County Tax Collector of Union County for 8 years, and prior to that Deputy Sheriff of the county for 4 years, and Sheriff of the county for 16 years, testified in substance as follows: He has with him his records and ledgers for about 21 or 22 years. From his records he testified as to the numbers of whites and the numbers of negroes in the 9 townships of Union County for a number of different years. He didn't miss a court during the 20 years he was Deputy Sheriff and Sheriff. He did not attend court after he was Sheriff. He testified as follows: "I cannot say that any negroes were on the Grand Jury during my term. They were on the regular panel but the Grand Jury is selected out of the regular panel in the courtroom in the presence of the Court by a child out of a hat. The whole panel is in there. I think if a negro had been chosen to serve on the Grand Jury I would have known it. I could not say for sure that any negroes did not serve on the Grand Jury, but I do know that they have been on

the regular juries and there could have been one on the Grand Jury, but I could not name one by name. I know Ike Montgomery. I am not sure which township he lives in but I think it is Vance. I have my scroll for the year 1954."

Roy J. Moore, Tax Accountant and Tax Supervisor of Union County since 15 May 1935, testified in substance: He is Clerk to the Board of County Commissioners of Union County. He helps prepare the jury list. The jury list is prepared every two years from the tax scroll for men, both negroes and whites. He gets the names of women, both negroes and whites, from the precinct lists. About 10% of the names placed in the jury box are women. When the jury list is prepared, it is presented to the Board of County Commissioners. The names so presented are cut from this list, and put in the jury box. From the jury list presented to the Board of County Commissioners is excluded those people exempt from jury service by N.C.G.S. 9-19, to wit, all practicing physicians, regular ministers of the gospel, practicing attorneys at law, etc. No negroes have been excluded from grand juries because of race to his knowledge.

An affidavit of Roy J. Moore in the Record shows that 48 persons were drawn from the jury box for service as jurors at the February Term 1957 of the Union County Superior Court, and that of this number one person at least was a negro.

James R. Braswell, Chairman of the Board of County Commissioners of Union County for the past four years testified in substance: The jury list has been prepared and put in the jury box twice since he was chairman — in 1955 and 1957. The jury list is made up from the tax records and precinct scrolls. He has been present each time the jury was drawn from the jury box during his term of office. At no time during his chairmanship of the Board has there been any discrimination.

This appears from an affidavit of James R. Braswell in the Record: "Affiant further says that in selecting the names of male persons for jury service, in the manner above stated, no consideration or regard is given to race, creed or color; that all names of women are selected from the precinct registration books for jury service without regard to race, creed, color or party affiliation; that the names of the white race and the negro race selected from the tax returns are therefore in direct proportion to the names of persons of the white race and the negro race appearing on the tax returns and the precinct registration books."

Deputy Sheriff Shelly Griffin, Deputy Sheriff for 8 years, a Policeman for 6 years, and just elected Sheriff of Union County, testified,

in part, on direct examination by defendant's counsel: "I have been Deputy Sheriff for eight years. When court is in session, I take charge of the courtroom. The Sheriff is there most of the time and I am there most of the time also. During the period, I knew personally that Lex Houston served on the Grand Jury and I believe that he served this year. He is serving now. He began to serve in February, 1958. I cannot remember any others who served; there may have been one more, but I can't remember." On cross-examination by the State he testified: "During my eight years of public service there, I have observed the trial panel and have observed negroes serving on the trial juries. About every term of Court we have, from one to two, maybe more. And that has been true within the past eight years. I have just been elected Sheriff of the County." On redirect examination by defendant's counsel he testified: "During my eight years I have observed negroes on the jury panel, one or two on practically every jury panel. Prior to that time, I was a City Police Officer and I did not get too much chance to go into the courtroom. But during those eight years, I can only remember seeing two negroes on the Grand Jury."

Defendant introduced in evidence the grand jury lists of Union County Superior Court for the years 1936 through 1958.

Defendant has offered no evidence that any qualified negro, man or woman, has had his or her name excluded at any time from the jury list or the jury box of Union County, or has been excluded at any time from serving on grand and petit juries in Union County Superior Court, by reason of race.

Defendant has offered no evidence of any racial discrimination at any time against members of the negro race in the preparation of the jury list and the jury box in Union County, and in drawing jurors from the jury box for a term of court. Defendant has offered no evidence of any racial discrimination at any time against members of the negro race in the drawing in open court by a child under ten years of age of the names of eighteen jurors to serve as a grand jury from the names of all persons returned as jurors at that term from a box or hat containing the names of all the jury panel, as is required by N.C.G.S. 9-24.

According to Judge Olive's finding of fact Number 2, to which defendant has not excepted, adult negroes constitute about 12½% of the adult population of Union County. The defendant's evidence clearly shows that for at least eight years prior to November 1958 one or two negroes have served on practically every jury panel at terms of Union County Superior Court, and from these panels during that

time the grand juries of Union County Superior Court have been selected. The evidence is undisputed that the names of jurors drawn from the jury box to serve as jurors at the February Term 1957 Union County Superior Court contained at least the name of one negro; and that from this list of jurors the grand jury was drawn that found the bill of indictment in this case. Defendant's evidence also plainly shows that for at least eight years prior to November 1958, only two negroes, to wit, Ike Montgomery in 1954, and Lex Houston in 1958, have served upon the grand juries of Union County Superior Court. Considering all of the evidence, the facts that for at least eight years prior to November 1958 only two negroes were drawn from a box or hat in open court by a child under ten years of age, as grand jurors from a list of jurors, practically all of which contained the names of one or two negroes, and that the grand jury finding the bill of indictment in this case was drawn from a jury panel containing at least one negro, do not show, in our opinion, that negroes because of their race have been systematically excluded from serving upon grand juries of Union County for at least eight years prior to November 1958, and in particular fails to show that negroes because of their race were wrongfully excluded from serving on the grand jury that found the bill of indictment against defendant in this case.

This Court said in *State v. Walls, supra:* "The child draws from the jury box the names of all sorts and conditions of men, white and negro persons, Jew and Gentile, who are qualified to serve under the law. A more perfect system could hardly be devised to insure impartiality."

Judge Olive's findings of fact are amply supported by competent legal evidence, with this exception: Judge Olive found in his findings of fact Number 3 that "members of the colored race served on the grand jury at various times before and subsequent to 1957." The evidence plainly shows, and he should have found, that two negroes have served on Union County grand juries for at least eight years prior to November 1958, to wit, Ike Montgomery in 1954, and Lex Houston in 1958. We amend his findings of fact in that respect alone. Before 1950 the evidence is not sufficiently clear to justify a finding of fact that negroes have served upon the grand juries of Union County from 1936 to 1950. A study of the evidence plainly shows that this is not a case where Judge Olive's crucial findings of fact are so lacking in support in the evidence that to give them effect would work that fundamental unfairness which is at war with due process or equal protection. Defendant's assignments of error to Judge Olive's findings of fact, as amended by us, are overruled.

Defendant's assignments of error to Judge Olive's failure to find that negroes have been systematically excluded from serving on grand juries of Union County for more than twenty years, and including the grand jury impaneled in 1957, and from the grand jury that indicted defendant, are overruled.

Defendant assigns as error the denial of his motion to quash the bill of indictment.

A negro objecting to a grand or petit jury because of alleged discrimination against negroes in its selection must affirmatively prove that qualified negroes were intentionally excluded from the jury because of their race or color. *S. v. Perry, supra; Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513, cert. denied, 345 U.S. 930, 97 L. Ed. 1360; *Fay v. New York,* 332 U.S. 261, 91 L. Ed. 2043; *Akins v. Texas, supra.*

This Court speaking by *Ervin, J.,* said in *Miller v. State, supra:* "The Fourteenth Amendment to the Constitution of the United States does not confer upon a negro citizen charged with crime in a state court the right to demand that the grand or petit jury, which considers his case, shall be composed, either in whole or in part, of citizens of his own race. All he can demand is that he be indicted or tried by a jury from which negroes have not been intentionally excluded because of their race or color. In consequence, there is no constitutional warrant for the proposition that a jury which indicts or tries a negro must be composed of persons of each race in proportion to their respective numbers as citizens of the political unit from which the jury is summoned. Citing numerous cases from the U. S. Supreme Court and from our Court."

*Eubanks v. Louisiana,* 356 U.S. 584, 2 L. Ed. 2d 991, is plainly distinguishable. The procedure in the State of Louisiana in selecting grand jurors is entirely different from the procedure in North Carolina. The facts of the two cases also differ.

The Supreme Court of the United States has held consistently for 80 years that the indictment of a negro defendant by a grand jury in a state court from which members of his race have been systematically excluded solely because of their race is a denial of his right to the equal protection of the laws required by the Fourteenth Amendment to the United States Constitution. *S. v. Perry, supra; Miller v. State, supra; Eubanks v. Louisiana, supra.* A like conclusion is reached in North Carolina by virtue of our decision on "the law of the land" clause embodied in the Declaration of Rights, Art. I, Sec. 17, of the North Carolina Constitution, and we have consistently so held since 1902. *S. v. Peoples,* 131 N.C. 784, 42 S.E. 814; *S. v. Speller,* 229 N.C. 67, 47 S.E. 2d 537; *Miller v State, supra; S v. Perry, supra.* However,

the evidence in this case and Judge Olive's findings of fact do not show a systematic exclusion of members of the defendant's race, solely because of their race, from the grand jury which found the bill of indictment against him, and from grand juries of Union County for at least seven years before that time.

Judge Olive designates all of his findings as findings of fact. They are both findings of fact and conclusions of law. His findings of fact, as amended by us, amply support his conclusions of law and his order. Judge Olive properly denied defendant's motion to quash the bill of indictment, and his assignment of error thereto is overruled.

Defendant's assignment of error for the failure of the court to strike out an affidavit of James R. Braswell, Chairman of the Board of County Commissioners, offered in evidence by the State is overruled. The learned trial judge was well able to weigh the evidence, and to disregard incompetent evidence, if any, in the affidavit. There is nothing in Judge Olive's findings of fact to show, that if the affidavit contained incompetent evidence, which we do not admit, it influenced in any way his findings of fact, his conclusions of law, and his order refusing the motion to quash the bill of indictment. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668; *Insurance Co. v. Shaffer,* 250 N.C. 45, 108 S.E. 2d 49.

Defendant has in his brief his exceptions to the failure of the trial court to sustain his motions for judgment of nonsuit. He makes no argument in his brief in respect thereto. He closes his brief by stating that if his assignment of error to the refusal of the court to quash the bill of indictment is overruled, that he should be awarded a new trial. There was sufficient evidence offered by the State to carry the case to the jury. The trial court correctly overruled defendant's motions for judgment of nonsuit.

Defendant's only other assignments of error, brought forward and discussed in his brief, relate to a hypothetical question asked Dr. J. G. Faulk. Dr. Faulk is a physician and surgeon. Defendant admitted he is a medical expert specializing in surgery. In October 1957 Dr. Faulk was chief of surgery in Union Memorial Hospital. On 12 October 1957 he saw Lillie Mae Rape in the hospital. He took her to an examination room, and did a pelvic examination. The hypothetical question contained a full and fair recital of all relevant and material facts already in evidence, and it was sufficiently explicit for the witness to give an intelligent and safe opinion. It was properly framed so as to inquire of Dr. Faulk, if he had a professional opinion, whether Lillie Mae Rape had had a miscarriage, and if so, what was the cause of it. Dr. Faulk drew no inference from the testimony. He merely ex-

pressed his professional opinion upon an assumed state of facts supported by evidence previously offered. Dr. Faulk's answers to the hypothetical question related to matters requiring expert knowledge in the medical field about which a person of ordinary experience would not be capable of forming a satisfactory conclusion unaided by expert testimony from one learned in the medical profession. All defendant's assignments of error relating to the hypothetical question and the answers thereto are overruled. *S. v. Knight,* 247 N.C. 754, 102 S.E. 2d 259; *S. v. Mays,* 225 N.C. 486, 35 S.E. 2d 494; *S. v. Dilliard,* 223 N.C. 446, 27 S.E. 2d 85; *S. v. Smoak,* 213 N.C. 79, 195 S.E. 72.

Defendant's other assignments of error set forth in the Record are not brought forward and mentioned in his brief. In respect to them no reason or argument is stated, and no authority is cited in defendant's brief. They are, under our Rules and decisions, deemed to have been abandoned. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 544, 562; Ibid in G.S., Vol. 4A 157, 185; *S. v. Bittings,* 206 N.C. 798, 175 S.E. 299; *S. v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *S. v. Atkins,* 242 N.C. 294, 87 S.E. 2d 507; *S. v. Thomas,* 244 N.C. 212, 93 S.E. 2d 63; *S. v. Adams,* 245 N.C. 344, 95 S.E. 2d 902; *S. v. Smith,* 249 N.C. 653, 107 S.E. 2d 311. See *Pruitt v. Wood,* 199 N.C. 788, 156 S.E. 126.

In the trial below we find

No Error.